**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

GOLDEN TOUCH TRANSPORTATION, LLC,          Case No.: 6:18-bk-02348-KSJ

               Debtor.          Chapter 11

_____/

### MOTION FOR AN ORDER PROHIBITING THE DEBTOR'S USE OF CASH COLLATERAL AND FOR AN ORDER DIRECTING TURNOVER OF RENTS

CenterState Bank, N.A., as successor in interest to Harbor Community Bank, by and through undersigned counsel, and pursuant to 11 U.S.C. § 363 files this Motion for an Prohibiting the Debtor's Use of Cash Collateral and for an Order Directing Turnover of Rents. In support, Movant would show the Court as follows:

#### Preliminary Statement of Relief Requested

1.      The Debtor commenced this case by filing a voluntary petition pursuant to Chapter 11 of Title 11 (the "Bankruptcy Code") on April 24, 2018 (the "Petition Date").

2.      On May 18, 2018, the Debtor filed its Summary of Schedules (Doc. 17).  The Debtor's Schedules A through H are incorporated herein.

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. § 1409.  Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M).

4.      The Debtor owns a parcel of real property that secures loans made by Harbor Community Bank ("Harbor") to the Debtor (the "Real Property").

5.      On or about January 1, 2018, Harbor merged with and into CenterState Bank, N.A. ("CenterState") and by virtue of that merger, CenterState owns and holds the loan documents executed by the Debtor to Harbor.

6.      CenterState has valid, perfected, and not otherwise avoidable liens on the Real Property, and any rents collected therefrom since the Petition Date (the "Rents") pursuant to the loan documents described below.

7.      The Rents constitute cash collateral as that term is defined in 11 U.S.C. § 363.

8.      CenterState seeks an Order directing that the Rents be turned over directly to CenterState and prohibiting the Debtor from further utilizing CenterState's cash collateral. CenterState additionally seeks adequate protection payments.

## **Factual Background**

### The First Mortgage Loan:

1.      On or about June 30, 2015, the Debtor executed and delivered to Harbor a Promissory Note in the principal amount of $715,000.00 (the "First Note").  A true and correct copy of the First Note is attached hereto and incorporated by reference herein as <u>Exhibit A</u>.

2.      To secure the First Note, on or about June 30, 2015, the Debtor executed and delivered that certain Mortgage and Security Agreement (the "First Mortgage") to Harbor, which is recorded at Official Records Book 10948, Page 4739 of the Public Records of Orange County, Florida.  A true and correct copy of the Mortgage is attached hereto and incorporated by reference herein as <u>Exhibit B</u>. The Mortgage encumbers the Real Property owned by the Debtor located in Orange County, Florida, more particularly described as:

Parcel A:

45430745;1

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road), thence South 30°54'28" East 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35'20" West 38.30 feet to the Westerly right-of-way line of State Road No. 15A and the Point of Beginning; thence run South 30°54'28" East 130.37 feet along said Westerly right-of-way line, thence run South 89°33'44" West 807.29 feet, thence run North 00°24'40" West 112.71 feet, thence run North 89°35'20" East 741.13 feet to the Point of Beginning.

Parcel B:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road); thence South 30°54'28" East, 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35'20" West, 38.30 feet to the Westerly right-of-way line of State Road No. 15 A; thence run South 30°54'28" East, 130.37 feet along the Westerly right-of-way line of State Road No. 15A to the Point of Beginning; thence continue South 30°54'28" East 34.81 feet along said Westerly right-of-way line; thence run South 89°33'44" West, 1448.21 feet to the West line of said Northwest 1/4 of Section 25; thence run North 00°47'40" West, 143.00 feet along said West line of the Northwest 1/4 of Section 25; thence run North 89°35'20" East, 624.21 feet; thence run South 00°24'40" East, 112.71 feet; thence run North 89°33'44" East, 807.29 feet to the Point of Beginning.

Excepting from the above lands any part described in Quit-Claim Deed recorded in Official Records Book 10949, page 1268, of the public record of Orange County, Florida.

3

Upon information and belief, the Real Property has an address of 7330 and 7340 Narcoossee Road, Orlando, Florida 32832.[1]

3.     The Mortgage also grants Harbor an interest in, among other things, (i) all personal property of the Debtor located on the Real Property, including, but not limited to, all inventory, equipment, fixtures, and all personal property, tangible or intangible (the "Personal Property") and (ii) all rents, proceeds, and profits accruing from the Real Property (the "Rents").

4.     Harbor perfected its security interest in the Personal Property by causing a UCC-1 Financing Statement to be filed in the Florida Secured Transaction Registry under instrument number 201504352724 and recorded at Official Records Book 10948, Page 4761 of the Public Records of Orange County, Florida (the "UCC").  True and correct copies of the UCC's are attached hereto and incorporated by reference herein as Composite Exhibit C.

5.     On or about June 30, 2015, the Debtor executed and delivered that certain Collateral Assignment of Leases and Rents (the "First Assignment of Rents") to Harbor, which is recorded at Official Records Book 10948, Page 4751 of the Public Records of Orange County, Florida and grants Harbor a further security interest in the Rents.  A true and correct copy of the Assignment of Rents is attached hereto and incorporated by reference herein as Exhibit D.

6.     Accordingly, CenterState is the present owner and holder of a valid and properly perfected lien on the Real Property and related cash collateral including, without limitation all Rents.

7.     The Debtor defaulted under the First Note and First Mortgage by failing to make the payment due September 1, 2017 and all subsequent payments.

---

[1] The Debtor also lists real property located at 7350 Narcoossee Road, Orlando, Florida on its Schedules.  Based upon information and belief, CenterState believes 7330, 7340 and 7350 Narcoosee Road comprise one 4.5 acre parcel and that its Mortgage encumbers all of the Debtor's real property listed on the Schedules.

45430745;1

8.      CenterState is the owner and holder of the First Note, the First Mortgage, the UCC and the First Assignment of Rents (collectively referred to as the "First Mortgage Loan Documents") by virtue of Harbor's merger with and into CenterState described above.

9.      As of the Petition Date of April 24, 2018, the Debtor owed CenterState the principal balance of $649,494.84, accrued interest of $20,827.40, late fees of $5,357.06, appraisal fees of $2,800, collateral risk assessment fees of $1,200 and prepetition attorneys' fees and costs of $9,702.50 for a total owed of $689,381.80 under the First Mortgage Loan Documents.   The Orange County Property Assessor values the Real Property at $575,337. Therefore, there is no equity in the Real Property.

The Second Mortgage Loan:

10.     On or about September 8, 2016, the Debtor executed and delivered to Harbor a Commercial Promissory Note in the principal amount of $215,000.00 (the "Second Mortgage Note").   A true and correct copy of the Second Mortgage Note is attached hereto and incorporated by reference herein as Exhibit E.

11.     To secure the Second Mortgage Note, the Debtor executed and delivered that certain Commercial Real Estate Mortgage (the "Second Mortgage") to Harbor, which is recorded in the Official Records of Orange County, Florida, and assigned document number 20160478250.   A true and correct copy of the Second Mortgage is attached hereto and incorporated by reference herein as Exhibit F.  The Second Mortgage further encumbers the Real Property and grants Harbor a further security interest in the Personal Property and the Rents.

12.     To further secure the Second Mortgage Note, the Debtor executed and delivered that certain Assignment of Leases and Rents (the "Second Assignment of Rents") to Harbor which is recorded in the Official Records of Orange County, Florida and assigned document

number 20160478251, and grants Harbor a further security interest in the Rents.  A true and correct copy of the Second Assignment of Rents is attached hereto and incorporated by reference herein as <u>Exhibit G</u>.

13.    Accordingly, CenterState is the present owner and holder of a valid and properly perfected lien on the Real Property and related cash collateral including, without limitation all Rents.

14.    The Debtor defaulted under the Second Mortgage Note and Second Mortgage by failing to make the payment due March 1, 2017 and all subsequent payments.

15.    CenterState is the owner and holder of the Second Mortgage Note, the Second Mortgage, and the Second Assignment of Rents (collectively referred to as the "Second Mortgage Loan Documents") by virtue of Harbor's merger with and into CenterState described above.

16.    As of the Petition Date of April 24, 2018, the Debtor owed CenterState the principal balance of $197,773.14, accrued interest of $8,379.68, late fees of $806.28, appraisal fees of $2,400, appraisal review fees of $495 and prepetition attorneys' fees and costs of $7,630.50 for a total owed of $216,871.99 under the Second Mortgage Loan Documents.  The Orange County Property Assessor values the Real Property at $575,337.   Therefore, there is no equity in the Real Property against the Combined Debt of the Real Property Loan Documents and Second Mortgage Loan Documents.

The Foreclosure:

17.    On November 6, 2017, Harbor filed a Complaint to Foreclose Mortgage, for Assignment of Rents and for Money Judgments against the Debtor in the Circuit Court, Ninth

Judicial Circuit, In and For Orange County assigned Case No. 2017-CA-009812 (the "Foreclosure Action").

18.     On March 2, 2018, CenterState and the Debtor entered into a Forbearance Agreement (the "Forbearance") with an effective date of February 15, 2018.  Pursuant to the Forbearance, CenterState agreed to stay the Foreclosure Action for a period of 90 days in exchange for certain payments to be made by the Debtor, including a $15,000 payment to be made within seven days of the effective date of the Forbearance.  The Debtor defaulted under the Forbearance by failing to make the required $15,000 payment by the required deadline.

19.     After Debtor's default under the Forbearance, CenterState resumed its prosecution of the Foreclosure Action and a hearing on CenterState's Motion for Final Summary Judgment for Foreclosure of Real Property, Money Judgments, Turnover of Rents, and Replevin of Personal Property was scheduled for April 25, 2018.  The Debtor filed its bankruptcy petition the day before the scheduled hearing which was cancelled as a result of this bankruptcy case.

The Debtor's Rents

20.      On its Schedule G, the Debtor identified 10 leases with various tenants for use of portions of the Real Property (the "Leases").

21.     The Debtor's representative at the Section 341 Meeting testified that the Debtor was collecting rents on a monthly basis pursuant to the Leases, including $8,000 per month from Gold Park Orlando, LLC.

**The Relief Requested**

22.     CenterState seeks entry of an Order: (1) directing turnover of the Rents paid pursuant to the Leases directly to CenterState; (2) prohibiting the Debtor from using any cash collateral; and (3) requiring the Debtor to make adequate protection payments to CenterState.

23.    11 U.S.C. § 363(c)(2) provides:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph 1 of this subsection unless—
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

24.    Under § 363(c)(2), the Debtor is prohibited from using or disposing of cash collateral in which CenterState has a properly perfected security interest unless CenterState consents to such use of the cash collateral or the Court, after notice and a hearing, authorizes such use.  *See* 11 U.S.C. § 363(c)(2).

9.    The Debtor has not yet sought CenterState's consent to the use of cash collateral and has not filed a Motion seeking the Court's authority to use cash collateral.

10.    CenterState has not consented and does not consent to the Debtor's use of its cash collateral, including the Rents.

11.    The Debtor should be required to account to the Court and to CenterState for any use of cash collateral since the Petition Date.

12.    The Rents and all other cash collateral should be segregated in a separate interest-bearing account and should not be used by the Debtor absent Court order.

13.    Further, pursuant to Bankruptcy Code §§ 361 and 363(e), the use, sale, or lease of property, must be prohibited or conditioned in such a manner as to provide CenterState with adequate protection of its interest therein.  Section 363(e) of the Bankruptcy Code, in relevant part, provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

Section 361 of the Bankruptcy Code states that:

> When adequate protection is required under section . . . 363 . . . of an interest of an entity in property, such adequate protection may be provided by –
>
> (1) requiring the [debtor] to make a cash payment or periodic cash payments to such entity, to the extent that . . . use under section 363 . . . results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such . . . use results in a decrease in the value of such entity's interest in such property;
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title . . . as will result in the realization . . . of the indubitable equivalent of such entity's interest in such property.

14.    The plain meaning of Bankruptcy Code § 363(e) entitles CenterState, as "an entity that has an interest in property … used or leased by the [Debtor]," to adequate protection of its interest in the Real Property.  Adequate protection is intended to ensure that a party's interest in its property is not impaired during the course of the bankruptcy, when the automatic stay prevents the party from otherwise acting to protect its interests.  *In re 354 East 66th Street Realty Corp.*, 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995).

15.    To the extent the Debtor has used any cash collateral without replenishing the same to CenterState, as a measure of adequate protection, CenterState should be granted a post-petition security interest and lien in the Debtor's assets, which security interest and lien should be senior to all claims, including but not limited to all rights and interests including costs and expenses of administration, and an appropriate administrative expense claim.

16.    Accordingly, the Debtor should be required make either cash payments to CenterState and/or CenterState should be granted a post-petition security interest and lien in the Debtor's assets, which security interest and lien should be senior to all claims, including but not

45430745;1

limited to all rights and interests including costs and expenses of administration, and an appropriate administrative expense claim.

WHEREFORE, CenterState Bank, N.A. respectfully requests entry of an Order: (1) directing all cash collateral, including the Rents, be turned over directly to CenterState; (2) prohibiting the Debtor from using any cash collateral; (3) directing that the Debtor be required to make adequate protection payments to CenterState; and (4) granting such other and further relief as the Court deems just and proper.

Dated: June 8, 2018                                   AKERMAN LLP

                                                      By: */s/ Christian P. George*
                                                          Christian P. George
                                                          Florida Bar Number: 41055
                                                          Email: christian.george@akerman.com
                                                          50 North Laura Street, Suite 3100
                                                          Jacksonville, FL  32202
                                                          Telephone:  (904) 798-3700
                                                          Facsimile:  (904) 798-3730

                                                          and

                                                          Raye C. Elliott
                                                          Florida Bar No.: 018732
                                                          Email: raye.elliott@akerman.com
                                                          401 East Jackson Street, Suite 1700
                                                          Tampa, FL 33602
                                                          Telephone: (813) 223-7333
                                                          Facsimile:  (813) 223-2837

                                                          *Attorneys for CenterState Bank, N.A., as successor*
                                                          *in interest to Harbor Community Bank*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was furnished this 8th day of June, 2018, either by electronic notification or U.S. mail, postage prepaid and properly addressed, to:

Golden Touch Transportation, LLC
7350 Narcoossee Road
Orlando, FL 32822

Justin M. Luna, Esq.
Latham, Shuker, Eden & Beaudine, LLP
P.O. Box 3353
Orlando, FL 32802-3353

United States Trustee - ORL
Office of the United States Trustee
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

and the parties listed on the attached Local Rule 1007-2 Parties in Interest List.

*/s/ Christian P. George*
Attorney

45430745;1

```
Label Matrix for local noticing        Ala Mahmoud                         Ashraf Ghobashy
113A-6                                  7 Main Street                      656 Shadowmoss Circle
Case 6:18-bk-02348-KSJ                  Safaga                             Lake Mary, FL 32746-4421
Middle District of Florida              Red Sea, Egypt, 84731
Orlando
Fri Jun  8 14:50:50 EDT 2018

Carlos Lopez                            Ford Motor Credit Company LLC      Michael Sterns
10616 Savannah Plantation Ct            c/o Roger A. Kelly, Esquire        8208 Druid Hills Reserve
Orlando, FL 32832-5100                  P.O. Box 3146                      Atlanta, GA 30329-2063
                                        Orlando, FL  32802-3146


Ragab Ahmed                             Talaal Abdulkudos                  Yousef Naem
25 EBN E Walid St.                      21 A Dawlatyan                     7 Tafteesh El Rai Aghakan
Safaga                                  Shoubra                            Shoubra
Red Sea, Egypt, 84731                   Cairo, Egypt, 11672                Cairo, Egypt, 11672


United States Trustee - ORL +           Roger A Kelly +                    Justin M. Luna +
Office of the United States Trustee     Rush, Marshall, Jones & Kelly, P.A. Latham, Shuker, Eden & Beaudine, LLP
George C Young Federal Building         Post Office Box 3146               P.O. Box 3353
400 West Washington Street, Suite 1100  Orlando, FL 32802-3146             Orlando, FL 32802-3353
Orlando, FL 32801-2210


Christian P George +                    Audrey M Aleskovsky +              Note: Entries with a '+' at the end of the
Akerman LLP                             Office of the United States Trustee name have an email address on file in CMECF
50 N. Laura Street, Suite 3100          George C. Young Federal Building
Jacksonville, FL 32202-3659             400 West Washington St, Suite 1100
                                        Orlando, FL 32801-2210


End of Label Matrix
Mailable recipients    14
Bypassed recipients     0
Total                  14
```

## PROMISSORY NOTE

#     2860

| | |
|---|---|
| DATE OF NOTE: | June 30, 2015 |
| PRINCIPAL AMOUNT: | $715,000.00 |
| MATURITY DATE: | July 1, 2030 |
| MAKER: | GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company |
| MAKER'S ADDRESS: | 7350 Narcoossee Road<br>Orlando, FL 32822 |
| PAYEE: | HARBOR COMMUNITY BANK |
| PAYEE'S MAILING ADDRESS: | 2222 Colonial Road, Suite 101<br>Fort Pierce, FL 34950 |

FOR VALUE RECEIVED, the undersigned and if more than one, jointly and severally, (the "Maker") does hereby covenant and promise to pay to the order of the Payee or to its successors and assigns, at the Payee's Address or at such other place as the Payee may designate to the Maker in writing from time to time, in legal tender of the United States, the Principal Amount with interest from the date hereof computed at the Interest Rate on the unpaid balance of the Principal Amount at the times and in the amounts set forth herein.

1.    TERM/MATURITY DATE. The term of this Note is comprised of four distinct loan periods, namely the "Initial Period", the "First Adjustment Period", the "Second Adjustment Period", and the "Final Adjustment Period".

   (a)    The "Interest Only Period" shall commence on the date of the Note (the "Interest Only Period Commencement Date"), and shall end on October 1, 2015 (the "Initial Period Maturity Date").

   (b)    The "First Adjustment Period" shall commence on October 2, 2015 (the "First Adjustment Period Commencement Date"), and shall end on July 1, 2020 (the "First Adjustment Period Maturity Date").

   (c)    The "Second Adjustment Period" shall commence on July 2, 2020 (the "Second Adjustment Period Commencement Date"), and shall end on July 1, 2025 (the "Second Adjustment Period Maturity Date").

   (d)    The "Final Adjustment Period" shall commence on July 2, 2025 (the "Final Adjustment Period Commencement Date"), and shall end on July 1, 2030 (the "Maturity Date").

2.    INTEREST RATE.

Page 1 of 6

**Exhibit A**

a)      The Interest Rate for the Interest Only Period and the First Adjustment Period shall be a fixed rate of interest equal to Four and 35/100 percent (4.35%) per annum.

b)      The Interest Rate for the Second Adjustment Period shall be established three (3) days before the Second Adjustment Period Commencement Date (herein the "Second Adjustment Determination Date"), at a rate of interest equal to the then Five Year US Treasury Note with a constant maturity plus an additional 3.50%, but in no event shall the Interest Rate for such period be less than Four and 35/100 percent per annum.   The Interest Rate for the Second Adjustment Period will remain fixed for the remainder of the Second Adjustment Period.

c)      The Interest Rate for the Final Adjustment Period shall be established three (3) days before the Final Adjustment Period Commencement Date (herein the "Final Adjustment Determination Date"), at a rate of interest equal to the then Five Year US Treasury Note with a constant maturity plus an additional 3.50%, but in no event shall the Interest Rate for such period be less than Four and 35/100 percent per annum. The Interest Rate for the Final Adjustment Period will remain fixed for the remainder of the Final Adjustment Period until the Maturity Date.

3.      PAYMENTS.

(a)      During the Interest Only Period, an interest payment shall be due and payable monthly commencing on August 1, 2015, and on the 1st day of each and every month thereafter through and including the Interest Only Period Maturity Date.

(b)      During the First Adjustment Period, principal and interest shall be due and payable in 57 consecutive monthly installments (based on an assumed 177 month amortization) for the indebtedness evidenced by this Note, at the Interest Rate for the First Adjustment Period, commencing on November 1, 2015, and shall be due and payable on the 1st day of each and every successive month thereafter through and including the First Adjustment Period Maturity Date. At no time shall there be negative amortization of the sums due under this Note.

(c)      During the Second Adjustment Period, principal and interest shall be due and payable in 60 consecutive monthly installments (based on an assumed 120 month amortization) for the indebtedness evidenced by this Note, at the Interest Rate for the Second Adjustment Period commencing on August 1, 2020, and shall be due and payable on the 1st day of each and every successive month thereafter through and including the Second Adjustment Period Maturity Date. At no time shall there be negative amortization of the sums due under this Note.

(d)      During the Final Adjustment Period , principal and interest shall be due and payable in 60 consecutive monthly installments (based on an assumed 60 month amortization) for the indebtedness evidenced by this Note, at the Interest Rate for the Final Adjustment Period, commencing on August 1, 2025, and shall be due and payable on the 1st day of each and every successive month thereafter through and including the Maturity Date. At no time shall there be negative amortization of the sums due under this Note.

(e)      Maturity Date. On the Maturity Date, the entire unpaid principal balance

**Exhibit A**

together with accrued interest shall be due and payable in full.

4.    DEFAULT.  The occurrence of any one or more of the following conditions shall each and all constitute a condition of default under this Note:

(a)    If any payment as set forth herein is not made on this Note when due.

(b)    If any one or more of the Maker is an individual, or if any person who has guaranteed the payment of this Note (a "Guarantor") is an individual, then the death of any one or more of the Maker or the Guarantor.

(c)    If this Note is secured, then any condition of default whatsoever occurs under any mortgage, pledge agreement, security agreement or any other agreement whatsoever relating to any collateral that may have been given for the payment of this Note.

(d)    Any application or petition is filed by or against any Maker or Guarantor in connection with any bankruptcy or similar proceeding or if any Maker or Guarantor acknowledges or otherwise fails to pay their debts as and when they become due.

(e)    A default occurs under the terms and conditions of any other agreement between the Payee and any Guarantor relating to any guarantee of this Note.

5.    LATE PAYMENT FEE, ETC.  If a payment is late, you will be charged five percent (5.0%) of such payment as a late charge payment.  A payment, which is not received within ten (10) days after the due date shall be deemed late.  Further, if any payment shall not be paid when due (subject to any applicable notice and cure periods set forth herein), then the entire principal balance and accrued and unpaid interest thereon shall become due and payable at once or thereafter, at the option of the holder of this Note, without further notice to or demand upon the Maker.  All late payments shall be applied first to late charges, then to accrued interest and lastly to principal.  Failure to exercise these options shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.  The provisions of this Paragraph 5 relating to the 5% late charge payment shall not apply to the final "balloon" payment due at maturity.

6.    COSTS OF COLLECTION.  The Maker and each endorser, surety, and guarantor, agrees that they shall, jointly and severally, pay all costs, expenses and reasonable attorneys' fees, incurred by the Payee in connection with any aspect of this Note, including any default as well as any proceedings which may involve this Note or any other loan document relating hereto including, but not limited to, arbitration, litigation, bankruptcy proceedings, etc.  The undersigned specifically agree that in the event of any bankruptcy of the Maker, the Payee shall be entitled to recover all its expenses and reasonable attorneys' fees incurred by the Payee in regard to any bankruptcy proceeding.

7.    INTEREST, DEFAULT INTEREST, ETC.  Interest under this Note is computed on the basis of a 360-day year period and charged for the actual number of days elapsed in each interest calculation period.  This Note and all sums due hereunder shall bear interest at the highest lawful rate of interest per annum permitted under the laws of the State of Florida from the date when the

**Exhibit A**

principal and accrued interest under this Note shall be due and payable or upon any default under this Note or the Mortgage (as hereinafter defined). Notwithstanding any term, condition, obligation or provision herein to the contrary, it is the express intent of the Payee that no interest, consideration or charge in excess of that permitted in the State of Florida may be accrued, charged or taken or become payable hereunder. In the event it is hereafter determined that the Payee of this Note has taken, charged or reserved interest in excess of that permitted under Florida law, whether due to prepayment, acceleration or otherwise, such excess shall be refunded to the Maker or credited against the sums due the Payee hereunder.

8.    COLLATERAL.  This Note is secured, inter alia, by that certain Mortgage and Security Agreement dated of even date herewith to be recorded in the Public Records of Orange County, Florida from Maker (the "Mortgage"), encumbering real property situated in the State of Florida, and to which reference is hereby made for a description of said real property, the nature and extent of the security, the rights of the Payee in respect thereof and the terms and conditions upon which this Note is issued.  This Note is subject to the terms and conditions of that certain Construction Loan Agreement (the "Loan Agreement") by and between Maker and Payee of even date herewith. The Maker agrees that it shall be bound by any agreement extending the time or modifying the above terms of payment made by the Payee and the owner of the property affected by the Mortgage or the Loan Agreement, whether with or without notice to the Maker, and the Maker shall continue to be liable to pay the amount due hereunder, but with interest at a rate no greater than the Interest Rate according to the terms of any such agreement of extension or modification.  The unpaid balance of the Principal Amount, plus accrued interest, shall become due and payable at the option of the Payee upon the happening of an event by which said balance shall or may become due and payable under the terms of the Mortgage or any other loan document relating to this Note or said Mortgage.

9.    CROSS DEFAULT.  Maker hereby agrees that the occurrence of an Event of Default under any other obligation of Maker to Payee shall constitute an Event of Default under this Note. An Event of Default under this Note shall be an Event of Default under any other obligation of Maker to Payee.

10.    AMENDMENTS TO NOTE.  This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

11.    WAIVER OF PRESENTMENT. ETC.  All parties to this Note, whether Maker, endorser, surety, or guarantor, hereby waive presentment for payment, demand, protest, notice of protest and notice of dishonor, and expressly agree jointly and severally to remain and continue bound for the payment of the principal and interest provided for by the terms of this Note, notwithstanding any extension or extensions of the time of, or for the payment of said principal or interest, or any change or the changes in the amount or amounts agreed to be paid under or by virtue of the obligation to pay provided for in this Note, or any change or changes by way of release or surrender or substitution of any real property and collateral or either, held as security for this Note, and waive all and every kind of notice of such extension or extensions, change or changes, and agree that the same may be made without the joinder of such party.

Page 4 of 6

**Exhibit A**

12.    LAW GOVERNING. The provisions of this Note shall be construed and interpreted in accordance with, and all rights and obligations of the parties hereunder governed by, the laws of the State of Florida.

13.    AUTHORIZATION STATUTE FOR INTEREST. Interest charges are authorized by Chapter 658, Florida Statutes.

14.    PREPAYMENT. In the event that the loan is paid off before its scheduled maturity, the following pre-payment penalties will apply based on the outstanding principal balance at the time the loan is paid off:

The unpaid principal balance of the loan shall be pre-payable in whole or in part together with accrued interest thereon to the date of such prepayment on any installment payment hereunder, provided that no default then exists or has previously occurred and that Borrower gives Lender not less than thirty (30) days prior written notice of its intention to do so and on the further condition that Borrower shall also pay at the time of such prepayment and in addition thereto, the following: (a) a premium equal to five (5%) of the amount of principal prepaid in Loan Year one, (b) a premium equal to four percent (4%) of the amount of principal prepaid in Loan Year two, (c) a premium equal to three percent (3%) of the amount of principal prepaid in Loan Year three, (d) a premium equal to two percent (2%) of the amount of principal prepaid in Loan Year four, and (e) a premium equal to one percent (1%) of the amount of principal prepaid in Loan Year five. "Loan Years" means a twelve (12) calendar month period commencing on the date on which the first installment payment hereunder is due and payable and each subsequent Loan Year commencing on the anniversary thereof. No partial prepayment shall extend or postpone the due date of any subsequent monthly installment of principal and/or interest arising hereunder. Notwithstanding the foregoing, commencing with the fourth anniversary of the date of this Note, provided Borrower is not then in default, Borrower may prepay this Note in whole or in part without penalty.

15.    ATTORNEYS' FEES. All parties liable for the payment of this Note agree to pay the Payee in addition to the principal, premium and interest due and payable hereon, reasonable paralegal fees, attorneys' fees and costs, whether or not an action be brought, for the services of counsel employed after maturity or default to collect this Note or any principal or interest due hereunder, or to protect the security, if any, or enforce the performance of any other agreement contained in this Note or in any instrument of security executed in connection with the loan evidenced hereby, including, but not limited to costs, paralegal fees and attorneys' fees and costs on any trial, or appellate proceedings, or in any proceedings under the United States Bankruptcy Code or in any post judgment proceedings.

16.    RIGHT OF SET-OFF. Neither the Maker, any co-signer, endorser, surety nor guarantor shall have any right of set-off against the Payee under this Note, the Mortgage, the Loan Agreement or under any loan document executed in connection with the loan evidenced by this Note. In addition to the remedies provided for herein, the Maker, each co-signer, endorser, surety and guarantor grants to the Payee a security interest in any funds or other assets from time to time on deposit with or in possession of the Payee, and the Payee may, at any time set-off the indebtedness evidenced by this Note against any such funds or other assets, including, but not limited to, all money owed by Payee to Maker, each co-signer, endorser, surety and guarantor whether or not due.

Exhibit A

Maker, each co-signer, endorser, surety and guarantor acknowledge and agree that Payee may exercise its right of set-off to pay all or any part of the outstanding principal balance and accrued interest owed on this Note or on any other obligation of the Maker to the Payee against any obligation Payee may have, now or hereafter, to pay money to Maker, each co-signer, endorser, surety and guarantor. This right of set-off includes, but is not limited to, (a) any deposit, account balance, securities account balance or certificate of deposit balance Maker has with Payee. Maker hereby appoints Payee as its attorney-in-fact and authorizes Payee to redeem or obtain payment on any certificate of deposit in which Maker has an interest in order to exercise Payee's right of set-off. Such authorization applies to any certificate of deposit even if not matured. Maker further authorizes Payee to assess and withhold any early withdrawal penalty without liability against Payee in the event such penalty is applicable as a result of Payee's set-off against a certificate of deposit prior to its maturity. Payee's right of set-off may be exercised upon an Event of Default: (a) without prior demand or notice; (b) without regard to the existence or value of any collateral securing this Note; and (c) without regard to the number or creditworthiness of any other persons who have agreed to pay this Note. Payee will not be liable for dishonor of a check or other request for payment where there is insufficient funds in the account (or other obligation) to pay such request because of Payee's exercise of its right of set-off. Maker agrees to indemnify and hold Payee harmless from any person's claims, arising as the result of Payee's right of set-off and the costs and expenses, including without limitation, attorneys' fees.

17.    <u>WAIVER OF JURY TRIAL</u>.  ALL PARTIES TO THIS NOTE, WHETHER MAKER OR PAYEE, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AFTER CAREFUL CONSIDERATION AND AN OPPORTUNITY TO SEEK LEGAL ADVICE, WAIVE THEIR RIGHTS TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY OF THE PROVISIONS OF THIS NOTE, THE MORTGAGE, OR ANY OTHER DOCUMENTS EXECUTED IN CONJUNCTION WITH THE LOAN SECURED BY THE MORTGAGE.

GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company

By: _____

Name:  Vivien Barzo

As Its: Manager

Documentary Stamp Tax in the amount of $2,502.50 and Intangible Taxes in the amount of $1,430.00 have been paid with the recording of that certain Mortgage and Security Agreement by Maker, dated of even date herewith, to be filed and recorded in the Public Records of Orange County, Florida.

Page 6 of 6

**Exhibit A**

DOC# 20150351713 B: 10948 P: 4739
07/09/2015 03:29:11 PM  Page 1 of 12
Rec Fee: $103.50
Deed Doc Tax: $0.00
DOR Admin Fee: $0.00
Intangible Tax: $1,430.00
Mortgage Stamp: $2,502.50
Martha O. Haynie, Comptroller
Orange County, FL
PU - Ret To: AKERMAN SENTERFITT AND EI

Prepared by/Return to:
Dudley Q. Sharp, Esq./met
SOUTH MILHAUSEN, P.A.
1000 Legion Place
Suite 1200
Orlando, Florida 32801
File # 6520-6

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (the "Mortgage"), dated as of this $30$ day of June, 2015, is entered into by GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company, having an address for purposes of this instrument of 7350 Narcoossee Road, Orlando, Florida 32822 (hereinafter referred to as the "Mortgagor"), to and in favor of HARBOR COMMUNITY BANK (hereinafter referred to as the "Mortgagee"), having an address for purposes of this instrument of 2222 Colonial Road, Suite 101, Ft. Pierce, FL 34950.

### WITNESSETH:

THAT in the consideration of the premises and in order to secure the payment of both the principal of, and interest and any other sums payable on that certain Promissory Note of even date herewith, made by Mortgagor payable to the order of the Mortgagee in the amount of SEVEN HUNDRED FIFTEEN THOUSAND AND 00/100 DOLLARS ($715,000.00) (the "Note"), and to secure the performance and observance of all covenants and conditions in this Mortgage and in all other instruments securing the Note and in order to charge the properties, interests and rights hereinafter described with such payment and performance and to secure additional advances, renewals and extensions thereof, the Mortgagor does hereby mortgage, sell, pledge and assign to the Mortgagee all estate, right, title and interest of the Mortgagor in and to that certain real property situate in Orange County, Florida, being more particularly described in Exhibit "A" attached hereto.

TOGETHER with all improvements now or hereafter located on said real property and all fixtures, appliances, apparatus, equipment, furnishings, and articles of personal property now or hereafter fixed to, attached to, or used in any way in connection with the complete use, occupancy, development or operation of said real property, all licenses and permits used or required in connection with the use of said real property, all leases of said real property now or hereafter entered into and all right, title and interest of the Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder pursuant to said leases, and all rents, proceeds and profits accruing from said real property and all proceeds of any voluntary or involuntary conversion of any of the foregoing, including proceeds of insurance and condemnation awards. The aforesaid real property and personal property being hereinafter referred to collectively as the "Mortgaged Property".

This Mortgage is a self-operative security agreement with respect to the aforesaid personal property but Mortgagor agrees to execute and deliver on demand such other security agreements, financing statements and other instruments as the Mortgagee may, at any time hereafter, request in order to perfect its security interest or to impose the lien hereof more specifically upon any such property. The Mortgagee shall have all rights and remedies, in addition to those specified herein, of a secured party

**Exhibit B**

under the Uniform Commercial Code.

TO HAVE AND TO HOLD the Mortgaged Property, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions thereof and all estate, right, title, interest, claim and demand whatsoever, either in law or in equity, of the Mortgagor of, in and to the same and every part and parcel thereof unto the Mortgagee in fee simple.

The Mortgagor warrants that Mortgagor has good and marketable title to an indefeasible fee estate in the real property comprising the Mortgaged Property subject to no lien, charge or encumbrance except such as the Mortgagee has agreed to accept in writing. The Mortgagor further covenants that this Mortgage is and will remain a valid and enforceable mortgage on the Mortgaged Property subject only to the exceptions herein provided. The Mortgagor has full power and lawful authority to mortgage the Mortgaged Property in the manner and form herein done or intended hereafter to be done and will preserve such title and will forever warrant and defend the same to Mortgagee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

The Mortgagor will, at the cost of Mortgagor, and without expense to the Mortgagee, do, execute, acknowledge and deliver all and every such further act, deed, conveyance, mortgage, assignment, notice of assignment, transfer and assurance as the Mortgagee shall from time to time require in order to preserve the priority of the lien of this Mortgage or to facilitate the performance of the terms hereof.

PROVIDED, HOWEVER, that if the Mortgagor shall pay to the Mortgagee the Note at the times and in the manner stipulated therein and in all other instruments securing the Note, including renewals, extensions or modifications thereof, and shall keep and perform all covenants and agreements in this Mortgage and all other instruments securing the Note to be kept, performed or observed by the Mortgagor, then this Mortgage shall cease and be void, but shall otherwise remain in full force and effect.

The Mortgagor further covenants and agrees with the Mortgagee as follows:

1. Compliance with Note and Mortgage. The Mortgagor shall comply with all provisions of this Mortgage, and of every other instrument securing the Note. The failure of the Mortgagor to promptly pay, when due, to the Mortgagee principal and interest under the Note, and all other sums required to be paid by the Mortgagor pursuant to the provisions of this Mortgage and of every other instrument securing the Note, prior to default, after provision of any applicable notice, and expiration of any applicable grace period, shall constitute a default under this Mortgage.

2. Payment of Taxes and Liens. The Mortgagor shall pay all taxes, assessments, levies, liabilities, obligations and encumbrances of every nature now on the Mortgaged Property or that hereafter may be imposed, levied or assessed upon this Mortgage or the Mortgaged Property or upon the indebtedness secured hereby. All such payments shall be made when due (subject to all applicable notice and cure periods) and payable according to law before they become delinquent and before any interest attaches or any penalty is incurred. The Mortgagor shall furnish evidence of such payment to the Mortgagee. Insofar as any indebtedness is of record, the same shall be promptly satisfied and evidence of such satisfaction shall be given to the Mortgagee.

In addition to making payments of principal and interest due under the Note, the Mortgagee may, at its option, require the Mortgagor to deposit with Mortgagee, until the Note is fully paid and all other

**Exhibit B**

secured obligations are satisfied, an amount equal to one-twelfth (1/12th) of the yearly payment for all taxes and/or insurance premiums. Such deposits shall be due on the same day as interest and principal payment are due under the Note and shall not be, nor deemed to be, trust funds, but may be commingled with the general funds of the Mortgagee, and no interest shall be payable in respect thereof. Upon demand by the Mortgagee, the Mortgagor shall deliver to Mortgagee such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable Mortgagee to pay such taxes or premiums when due. In the event of a default by Mortgagor under any term, covenant or condition of the Note, this Mortgage or any other instrument securing the Note, Mortgagee may apply to the reduction of the sums secured hereby, in such manner as Mortgagee shall determine, any amount under this paragraph remaining to Mortgagor's credit and any return premium received from cancellation of any insurance policy by Mortgagee upon foreclosure of this Mortgage.

3. _Government Fees and Charges; Curing of Violations._  The Mortgagor shall promptly pay and discharge any and all license fees or similar charges, together with any penalties and interest thereon, which may be imposed by any governmental authority having jurisdiction over the Mortgaged Property. Furthermore, the Mortgagor shall promptly cure any violation of law and comply with any order of said governmental authority in respect of the repair, replacement or condition of the Mortgaged Property.

4. _Insurance._  The Mortgagor will keep the improvements now existing or hereafter erected on the Mortgaged Property, insured as may be required from time to time by the Mortgagee against loss by fire and other hazards, casualties, and contingencies in such amounts and for such periods as may be required by the Mortgagee, and will pay promptly, when due, any premiums on such insurance, provision for the payment of which has not been made hereinbefore. All insurance shall be carried in companies approved by the Mortgagee and the policies and renewals thereof shall be held by the Mortgagee and have attached thereto loss payable clauses in favor of and in a form acceptable to the Mortgagee. Unless otherwise consented to by Mortgagee in writing, all policies shall have affixed thereto a standard mortgagee clause without contribution making all such losses under such policy payable to the Mortgagee as its interest may appear. In the event of loss, the Mortgagor will give immediate notice by mail to the Mortgagee, and the Mortgagee may make proof of loss if not made promptly by the Mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the Mortgagee instead of to the Mortgagor and Mortgagee jointly, and the insurance proceeds, or any part thereof, may be applied by the Mortgagee at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In the event of foreclosure of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of the indebtedness secured hereby, all right, title, and interest of the Mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee.

5. _Condemnation._  If at any time all or any portion of the Mortgaged Property shall be taken or damaged by condemnation proceedings under the power of eminent domain, all compensation awarded or otherwise paid shall be paid directly to the Mortgagee and the Mortgagee is hereby authorized, at its option, to commence, appear and to prosecute, in its own or in the Mortgagor's name any action or proceeding relating to any condemnation, or to settle or compromise any claim in connection therewith. All such compensation awards and any other payments or relief and the right thereto are hereby assigned by the Mortgagor to the Mortgagee and the Mortgagee, after deducting therefrom all of its expenses including attorney's fees, may release money so received without affecting the lien of this Mortgage, or may apply the same, in such manner as the Mortgagee shall determine, to the reduction of the sum secured hereby. The Mortgagor agrees to execute such further assignments of any compensation, awards, damages, claims, rights of action and proceeds, as the Mortgagee may require.

**Exhibit B**

6.  <u>Care of Mortgaged Property</u>.  The Mortgagor shall not remove or demolish any building or other improvement forming a part of the Mortgaged Property without the written consent of the Mortgagee.  The Mortgagor shall not permit, commit or suffer any waste, impairment or deterioration of the Mortgaged Property or any part thereof, and shall keep the same and improvements thereon in good condition and repair.  The Mortgagor shall notify the Mortgagee in writing within five (5) days of any damage or impairment of the Mortgaged Property.  The Mortgagee may at its option have the Mortgaged Property inspected at any time and the Mortgagor shall pay all costs incurred by the Mortgagee in performing such inspection.

7.  <u>Mortgagee's Right to Make Certain Payments</u>.  In the event the Mortgagor fails to pay or discharge the taxes, assessments, levies, liabilities, obligations and encumbrances, or fails to keep the Mortgaged Property insured or to deliver the policies, premiums paid, or fails to repair the Mortgaged Property as herein agreed, the Mortgagee may at its option pay or discharge the taxes, assessments, levies, liabilities, and obligations and encumbrances on any part thereof, procure and pay for such insurance, or make and pay for such repairs.  The Mortgagee shall have no obligation on its part to determine the validity or necessity of any payment thereof and any such payment shall not waive or affect any option, lien, equity or right of the Mortgagee under or by virtue of this Mortgage.  The full amount of each and every such payment shall be immediately due and payable and shall bear interest from the date thereof, until paid, at the highest rate allowable by law (the "Default Rate"), and together with such interest, shall be secured by the lien of this Mortgage.  Nothing herein contained shall be construed as requiring the Mortgagee to advance or expend monies for any of the purposes mentioned in this paragraph.

8.  <u>Payment of Expenses</u>.  The Mortgagor shall pay all costs, charges and expenses, including reasonable attorney's fees, disbursements and cost of abstracts of title, incurred or paid at any time by the Mortgagee due to the failure on the part of the Mortgagor promptly and fully to perform, comply with and abide by any stipulation, agreement, condition or covenant of the Note, this Mortgage, or any other document securing the Note.  Such costs, charges, fees and expenses shall be immediately due and payable, whether or not there be notice, demand, attempt to collect or suit pending.  The full amount of each and every such payment shall bear interest from the date thereof, until paid, at the highest rate allowable by law.  All such costs, charges and expenses so incurred or paid, together with such interest, shall be secured by the lien of this Mortgage and any other instrument securing the Note.

9.  <u>After Acquired Property</u>.  The lien of this Mortgage will automatically attach, without further act, to all after acquired property of whatever kind located in or on, or attached to, or used or intended to be used in connection with, or in the operation of, the Mortgaged Property.

10.  <u>Additional Documents</u>.  During the entire time this Mortgage is in effect, upon the Mortgagee's request, the Mortgagor shall make, execute and deliver or cause to be made, executed and delivered to the Mortgagee and, where appropriate, shall cause to be recorded or filed and thereafter to be re-recorded or refiled at such time and in such place as shall be deemed appropriate by the Mortgagee, any and all such further mortgages, instruments of further assurance, certificates and other documents as the Mortgagee may consider necessary or desirable in order to effectuate, complete, perfect, or to continue and preserve the obligations of the Mortgagor under the Note, this Mortgage and all other instruments securing the Note, and the lien of this Mortgage as a lien upon all of the Mortgaged Property.  Upon any failure by the Mortgagor to do so, the Mortgagee may make, execute, record, file, re-record, or refile any and all such mortgages, instruments, certificates, financing statements, and documents for and in the name of the Mortgagor.  The Mortgagor hereby irrevocably appoints the Mortgagee as agent and attorney-in-fact of the Mortgagor to do all things necessary to effectuate or assure compliance with this paragraph.

**Exhibit B**

11. <u>Event of Default</u>. Any one of the following shall constitute an "Event of Default" hereunder:

(a) Any default under the Note, including, without limitation, failure by Mortgagor to pay when due any installment of principal or interest due under the Note or any other sums to be paid by the Mortgagor hereunder or under any other instrument securing the Note.

(b) Failure by Mortgagor to duly keep, perform and observe any other covenant, condition or agreement (i.e. non-monetary covenants, conditions or agreements) in the Note, this Mortgage, any other instrument securing the Note or any other instrument collateral to the Note or executed in connection with the sums secured hereby after receiving thirty (30) days written notice to cure said non-monetary default from Mortgagee; provided, however, that if it shall not be reasonably possible to cure such non-monetary default within said thirty (30) day period, Mortgagor shall not be in default hereunder if it shall promptly commence action intended to cure such non-monetary default within said period and diligently pursue same to completion thereafter.

(c) Institution of foreclosure proceedings against the Mortgaged Property as the result of any other lien or claim, whether alleged to be superior or junior to the lien of this Mortgage. The Mortgagee may, at its option, immediately upon institution of such suit or during the pendency thereof, declare this Mortgage and the indebtedness secured hereby due and payable forthwith and may, at its option, proceed to foreclose this Mortgage.

(d) If either Mortgagor or any guarantor or endorser of the Note: (i) files a voluntary petition in bankruptcy or (ii) is adjudicated a bankrupt or insolvent, or (iii) files any petition or answer seeking or acquiescing in any reorganization, management, composition, readjustment, liquidation, dissolution or similar relief for itself under any law relating to bankruptcy, insolvency or other relief for debtors, or (iv) seeks or consents to or acquiesces in the appointment of any trustee, receiver, master or liquidator of itself or of all or any substantial part of the Mortgaged Property or of any or all of the rents, revenue issue, earnings, profits or income thereof, or (v) makes any general assignment for the benefit of creditors, or (vi) a court of competent jurisdiction enters an order, judgment or decree approving a petition filed against the Mortgagor or any guarantor or endorser of the Note seeking any reorganization, arrangements, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state, or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains unvacated and unstayed for an aggregate of sixty (60) days whether or not consecutive from the date of entry thereof, or (viii) any trustee, receiver or liquidator of the Mortgagor or of all or any substantial part of the Mortgaged Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof, is appointed without the prior written consent of the Mortgagee.

(e) Any breach of any warranty or material untruth of any representation of the Mortgagor contained in the Note, this Mortgage or any other instrument securing the Note.

(f) Any breach of any provision in any guaranty agreement connected with the Note by the guarantor therein or any breach of any warrantry or material untruth of any representation contained in any such guaranty.

12. <u>Acceleration</u>. If an Event of Default shall have occurred, the Mortgagee may declare the outstanding principal amount of the Note, the interest accrued thereon, and all other sums secured hereby

**Exhibit B**

to be due and payable immediately. Upon such declaration such principal and interest and other sum shall immediately be due and payable without demand or notice and said sums shall bear interest from such time until paid at the highest rate allowable under the laws of the State of Florida.

13. Remedies After Default. Upon an Event of Default, the Mortgagee may proceed by suit or suits at law or in equity or by any other appropriate proceeding or remedy to: (a) enforce payment of the Note or the performance of any term hereof or any other right; (b) foreclose this Mortgage and to sell, as an entirety or in separate lots or parcels, the Mortgaged Property under the judgment or decree of a court or courts of competent jurisdiction (c) collect all rents, issues, profits, revenue, income and other benefits from the Mortgaged Property; (d) apply to the court having jurisdiction thereof for the appointment of a receiver of all and singular the Mortgaged Property and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source derived, and thereupon it is hereby expressly covenanted and agreed that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases and said appointment shall be made by the court as a matter of strict right to the Mortgagee and without reference to the adequacy or inadequacy of the value of the Mortgaged Property, or to the solvency or insolvency of the Mortgagor or any other party defendant to such suit and the Mortgagor waives the right to object to the appointment of a receiver as aforesaid and consents that the appointment shall be made as an admitted equity and as a matter of absolute right to the Mortgagee and may be done without notice to the Mortgagor; or (e) pursue any other remedy available to the Mortgagee, including, but not limited to, taking possession of the Mortgaged Property without notice or hearing to the Mortgagor. The Mortgagee shall take action either by such proceedings or by the exercise of its power with respect to entry or taking possession, or both, as the Mortgagee may determine. Mortgagor shall pay all costs, charges and expenses of Mortgagee in connection with the enforcement of the provisions of this Mortgage and the pursuit of the remedies described above, including reasonable attorney's fees and all such costs, expenses and attorney's fees, for any retrial, rehearing or appeals.

14. No Waiver. Any failure by the Mortgagee to insist upon the strict performance by the Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof and the Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by the Mortgagor. Neither the Mortgagor nor any other person now or hereafter obligated for the payment of the whole or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of the Mortgagee to comply with any request of the Mortgagor or of any other person so obligated to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligations secured by this Mortgage, or, by reason of the release, regardless of consideration, of the whole or any part of the security held for the indebtedness secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner or owners of the Mortgaged Property and the Mortgagee extending the time of payment or modifying the terms of the Note or this Mortgage, without first having obtained written consent of the Mortgagor or such other person; and, in the last mentioned event, the Mortgagor and all such other persons shall continue liable to make such payments according to the terms of any such agreement of extension or modification, unless expressly released and discharged in writing by the Mortgagee. The Mortgagee may release, regardless of consideration, any party liable upon or in respect of the Note or any part of the security held for the indebtedness secured by this Mortgage without, as to any other or as to the remainder of the security, in anywise impairing or affecting the lien of this Mortgage or the priority of such lien over any subordinate lien. The Mortgagee may resort for the payment of the indebtedness secured by this Mortgage to any other security therefor held by the Mortgagee, in such order and manner as the Mortgagee may elect.

**Exhibit B**

15. <u>Non-Exclusive Remedies</u>. No right, power or remedy conferred upon or reserved to the Mortgagee by the Note, this Mortgage, or any other instruments securing the Note is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note, or any other instrument securing the Note, now or hereafter existing at law, in equity, or by statute.

16. <u>Successors and Assigns Bound; Joint and Several Liability and Benefits</u>. Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of the Mortgagor or the Mortgagee, shall bind and inure to the benefit of their respective heirs, successors and assigns, whether or not so expressed. The obligations created and benefits granted hereunder shall be joint and several among multiple mortgagors.

17. <u>Notices</u>. Any notice to the Mortgagor provided for in this Mortgage and Security Agreement shall be given by delivering it personally, via overnight courier or by mailing it, postage prepaid, by United States Certified Mail, return receipt requested, addressed to Mortgagor's address set forth herein or such other address as Mortgagor designates by advance written notice to Mortgagee. Any notice to Mortgagee shall be given by delivering it or by mailing it, postage prepaid, by United States Certified Mail, return receipt requested, addressed to Mortgagee's address stated herein or any other address Mortgagee designates by advance written notice to Mortgagor. Any notice provided for in this Mortgage and Security Agreement shall be deemed to have been given to Mortgagor or Mortgagee upon the earlier of actual receipt by the addressee or when delivery is attempted at the address specified herein and delivery is refused.

18. <u>Future Advances</u>. This Mortgage is given to secure not only existing indebtedness, but also such future advances, to be made at the option of the Mortgagee, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed the principal sum of two (2) times the original loan amount, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the Default Rate as defined in this Mortgage.

19. <u>Transfer of Ownership</u>. It is understood and agreed by the Mortgagor that as part of the inducement to the Mortgagee to make the loan evidenced by the Note, the Mortgagee has considered and relied on the credit worthiness and reliability of the Mortgagor. The Mortgagor covenants and agrees not to sell, convey, transfer, lease or further encumber any interest (either legal or beneficial) in all or any part of the Mortgaged Property without the prior written consent of the Mortgagee, which consent may be deemed to have been given by virtue of partial release provisions set forth herein or in any other collateral agreement. Any such sale, conveyance, transfer, lease or encumbrance made without the Mortgagee's prior written consent shall be void. If any person should obtain an interest (either legal or beneficial) in all or any part of the Mortgaged Property pursuant to the execution or enforcement of any lien, security interest or other right, whether superior, equal or subordinate to this Mortgage or the lien hereof, such event shall be deemed to be a transfer by Mortgagor and an Event of Default hereunder. In that event, Mortgagee, at its option (and not to the exclusion of any other remedy which it may have), may declare all the sums secured by this Mortgage to be immediately due and payable.

20. <u>Financial Statements</u>.

**Exhibit B**

(a) The Mortgagor shall furnish the Mortgagee with financial statements of Mortgagor, in form and content acceptable to Mortgagee, including (i) balance sheets and profit & loss statement, (ii) annual year end income and expense statement on the Mortgaged Property, (iii) annual business debt statements, and (iv) annual accounts payable and receivable reports, with aging. All such financial statements shall be certified to Mortgagee by the principal financial officer of Mortgagor, on an annual basis and delivered to Mortgagee within ninety (90) days after each calendar year-end. Mortgagor shall also furnish copies of completed Federal income tax returns of Mortgagor annually, within thirty (30) days of filing with the IRS (provided, however, that if an extension is filed, Mortgagor shall also provide to the Mortgagee on an interim basis copies of the preliminary tax return of Mortgagor, together with the extension form; a signed copy of the final tax return will be provided to the Mortgagee within thirty (30) days of filing), and such other financial information as the Mortgagee may require in a form and certified in the manner satisfactory to the Mortgagee.

(b) With respect to any guarantor of the Loan, Mortgagor shall promptly furnish and deliver, or cause each guarantor to furnish and deliver, to Mortgagee (i) guarantor's personal financial statements, on the approved financial statement forms, annually, within ninety (90) days after the close of each calendar year setting forth the manner in which assets are owned, including co-tenancies and the extent of Guarantors' obligation for liabilities; (ii) copies of guarantor's Federal Income Tax Returns, including all schedules, annually, within thirty (30) days of filing with the Internal Revenue Service; (iii) annual personal debt statements of such guarantor; (iv) annual rent rolls for all real properties owned by such guarantor; and (iv) such other financial information, statements and reports as the Lender may request from time to time.

21.  Toxic and Hazardous Wastes.  The Mortgagor expressly warrants and represents to the Mortgagee that no portion of the Mortgaged Property has in the past been used for handling, storage, transportation, or disposal of hazardous or toxic materials.  The Mortgagor further expressly warrants and represents to the Mortgagee that there has been no release or discharge of hazardous or toxic materials, including but not limited to, gasoline or petroleum products, upon the Mortgaged Property.  The Mortgagor shall not use, generate, manufacture, store, dispose on the Mortgaged Property or transport on, to or from the Mortgaged Property any flammable explosives, radioactive materials, or substances defined as or included in the definition of "hazardous substances, hazardous waste, hazardous materials, and toxic substances" under any applicable federal or state laws or regulations in effect during the term of this Mortgage.  A violation under the provisions of this paragraph shall be a default under this Mortgage and the Note and the Mortgagee may, at its sole option, declare the entire indebtedness immediately due and payable.  The Mortgagee may, at its sole option, obtain at the Mortgagor's expense a report from a reputable environmental consultant of the Mortgagee's choice as to whether the Mortgaged Property has been or is presently being used for the handling, storage, transportation, or disposal of hazardous or toxic materials.  If said report indicated such past or present use, handling, storage, transportation or disposal, the Mortgagee may require that all violations of law with respect to hazardous or toxic materials be corrected and/or that the Mortgagor obtain all necessary environmental permits before the Mortgagee shall fund any advance under this Mortgage.

22.  Cross-Collateralization and Cross-Default.  This Mortgage and the Mortgaged Property shall constitute security for the full faith performance of Mortgagor for the Note to the full extent provided herein, and any or all other obligations of Mortgagor or any affiliate thereof, whether now or in the future existing, to Mortgagee.  Mortgagor and Mortgagee agree that the occurrence of an Event of Default under any other obligation of Mortgagor or any affiliate thereof to Mortgagee shall constitute an Event of Default under this Mortgage and the Note.  An Event of Default under this Mortgage and the Note shall be an Event of Default under any other obligation of Mortgagor or any affiliate thereof to Mortgagee.

**Exhibit B**

Mortgagee shall not be obligated to satisfy this Mortgage until all obligations of Mortgagor and any affiliate(s) to Mortgagee have been fully satisfied.

23. <u>Miscellaneous</u>. In the event that any of the covenants, agreements, terms or provisions contained in the Note, this Mortgage or any other instrument securing the Note shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein and in the Note and any other instrument securing the Note shall be in no way affected, prejudiced or disturbed thereby.

24. <u>Attorney's Fees</u>. The term "attorney's fees" as used in this Mortgage includes any and all legal fees of whatever nature including, but not limited to, fees resulting from any appeal of an interlocutory order or final judgment or any other appellate proceedings arising out of any litigation or bankruptcy. Further, such term shall not be limited to fees incurred by Mortgagee in the enforcement of rights under this Mortgage.

25. <u>Cost of Recording Satisfaction</u>. The Mortgagor shall pay the cost of releasing and satisfying this Mortgage of record, including, without limitation, partial releases hereunder.

26. <u>Marshaling and Other Matters</u>. Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshaling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

27. <u>Indemnification</u>. Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorney's fees and expenses), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets, or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with the Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials on, from, or affecting the Mortgaged Property or any other property or the presence of Asbestos on the Mortgaged Property; (h) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials or Asbestos; (i) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials or Asbestos; or (j) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such

**Exhibit B**

Hazardous Materials or Asbestos including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs and litigation expenses. Any amounts payable to Mortgagee by reason of the application of this paragraph shall be secured by this Mortgage and shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Mortgagee until paid. The obligations and liabilities of Mortgagor under this paragraph shall survive any termination, satisfaction, assignment, entry of a judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

28. <u>Remedies of Mortgagor</u>. In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Mortgage or any other instrument securing the Note it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment.

29. <u>Subordination of Stockholder Debt</u>. Mortgagor hereby subordinates (or shall cause to be subordinated) to the Mortgage any and all indebtedness payable by Mortgagor to any stockholder, partner or member of Mortgagor, including any subsidiary company, corporation, or any general or limited partners of Mortgagor ("Stockholder Debt"). At Mortgagee's request, Mortgagor shall provide to Mortgagee copies of all notes and other evidence of debt or ownership involving any such entities or parties enjoining in or guaranteeing this loan, and agrees that any such Stockholder Debt will be treated and held by the Mortgagor throughout the term of this loan as equity capital of such entities or persons by virtue of this subordination in favor of Mortgagee, unless the payment of all or any part of such Stockholder Debt is authorized by the prior written consent of Mortgagee. Mortgagor shall also cause each guarantor who is a stockholder, partner or member of Mortgagor to subordinate any indebtedness owed to such guarantor to the Mortgage.

30. <u>WAIVER OF RIGHT TO JURY TRIAL</u>. MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT ANY PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THIS AGREEMENT.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

**Exhibit B**

IN WITNESS WHEREOF, Mortgagor have duly executed this Mortgage as of the date first above written.

Signed, sealed and delivered
in the presence of:

"MORTGAGOR"

GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company

By: _____
Name: Vivien Barzo
As Its: Manager

_____
Witness
Print Name: DARREN Oliverio

_____
Witness
Print Name: _Mary Ellen Taft_

STATE OF FLORIDA

COUNTY OF ORANGE

The foregoing instrument was acknowledged before me this 30 day of June, 2015, by Vivien Barzo, as Manager of GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company, who either (a) ___ is personally known to me, or (b) ___ has produced Florida D L _____ as identification.

_____
NOTARY PUBLIC
Print Name:
My Commission Expires:

M.E. TAFT
Notary Public - State of Florida
My Comm. Expires Aug 5, 2018
Commission # FF 130004

**Exhibit B**

EXHIBIT "A"

(Legal Description)

Parcel A:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road), thence South 30°54'28" East 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35'20" West 38.30 feet to the Westerly right-of-way line of State Road No. 15A and the Point of Beginning; thence run South 30°54'28" East 130.37 feet along said Westerly right-of-way line, thence run South 89°33'44" West 807.29 feet, thence run North 00°24'40" West 112.71 feet, thence run North 89°35'20" East 741.13 feet to the Point of Beginning.

Parcel B:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road); thence South 30°54'28" East, 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35' 20 West, 38.30 feet to the Westerly right-of-way line of State Road No. 15 A; thence run South 30°54'28" East, 130.37 feet along the Westerly right-of-way line of State Road No. 15A to the Point of Beginning; thence continue South 30°54'28" East 34.81 feet along said Westerly right-of-way line; thence run South 89°33'44" West, 1448.21 feet to the West line of said Northwest 1/4 of Section 25; thence run North 00°47'40" West, 143.00 feet along said West line of the Northwest 1/4 of Section 25; thence run North 89°35'20" East, 624.21 feet; thence run South 00°24'40" East, 112.71 feet; thence run North 89°33'44" East, 807.29 feet to the Point of Beginning.

**Exhibit B**

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM**

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON |
|---|
| Dudley Q. Sharp, Esq./met |

| B. SEND ACKNOWLEDGEMENT TO: | |
|---|---|
| Name | South Milhausen, P.A. |
| Address | 1000 Legion Place |
| Address | Suite 1200 |
| City/State/Zip | Orlando, Florida 32801 |

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

2015 Jul 09 08:00 AM

\*\*\*\*\*\* 201504352724 \*\*\*\*\*\*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names**

| 1.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Golden Touch Transportation, LLC | | | |
| 1.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 1.c MAILING ADDRESS Line One | | | |
|---|---|---|---|
| 7350 Narcoossee Road | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | Orlando | FL | 32822 | USA |

| 1.d TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1.e TYPE OF ORGANIZATION | 1.f JURISDICTION OF ORGANIZATION | 1.g ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | Florida | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 2.c MAILING ADDRESS Line One | | | |
|---|---|---|---|
| | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2.d TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2.e TYPE OF ORGANIZATION | 2.f JURISDICTION OF ORGANIZATION | 2.g ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME ( or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)**

| 3.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Harbor Community Bank | | | |
| 3.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 3.c MAILING ADDRESS Line One | | | |
|---|---|---|---|
| 2222 Colonial Road | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Suite 100 | Ft. Pierce | FL | 34950 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

See attached Exhibit "A" and "B"

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG. LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

| STANDARD FORM – FORM UCC-1 (REV.01/2009) | Filing Office Copy | Approved by the Secretary of State, State of Florida |
|---|---|---|

**Composite Exhibit C**

EXHIBIT "A"

1.   Debtor's name and address:
     GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company
     7350 Narcoossee Road
     Orlando, FL 32822

2.   This Security Agreement/Financing Statement covers the following types and items of
     property:      All right, title, and interest of Borrower in and to the Collateral, whether
     now owned or hereafter acquired by Borrower.

     For purposes of this Financing Statement, the following definitions shall apply:

     "Collateral" means all property of Borrower, wherever located and whether now owned
     by Borrower or hereafter acquired, including but not limited to; (a) all Inventory; (b) all
     General Intangibles; (c) all Accounts; (d) all Chattel Paper; (e) all Instruments and
     Documents and any other instrument or intangible representing payment for goods or
     services; (f) all Equipment; (g) all Investment Property; (h) all Commercial Tort Claims;
     (i) all Letter-of-Credit Rights; (j) all Deposit Accounts and funds on deposit therein,
     including but not limited to any Funding Account, Collections Account, and funds
     otherwise on deposit with or under the Control of Lender or its agents or correspondents;
     (k) all Fixtures located at or affixed to the real property known as Environmental
     Products of Florida Corporation (located at 2525 Clarcona Road, Apopka, FL 32703; and
     (l) all parts, replacements, substitutions, profits, products, Accessions, cash and non-cash
     Proceeds, and Supporting Obligations of any of the foregoing (including, but not limited
     to, insurance proceeds) in any form and wherever located. Collateral also includes (x) all
     written or electronically recorded books and records relating to any such Collateral and
     other rights relating thereto and (y) any other real or personal property as to which
     Lender, at any time of determination, has a Lien to secure the Obligations.

     "Collections Account" means any Deposit Account maintained by Borrower with Lender
     to which collections, deposits, and other payments on or with respect to Collateral may be
     made pursuant to the terms hereof and to which only Lender shall have access to
     withdraw or otherwise direct the disposition of funds on deposit therein.

     "UCC" means the Uniform Commercial Code (or any successor statute), as adopted and
     in force in the Jurisdiction or, when the laws of any other state govern the method or
     manner of the perfection or enforcement of any Lien in any of the Collateral, the Uniform
     Commercial Code (or any successor statute) of such other state.

     Certain UCC Terms.  Any term used in this financing statement filed in connection
     herewith which is defined in the UCC and not otherwise defined in this Security
     Agreement or in any other Loan Document shall have the meaning given to the term in
     the UCC, including, without limitation, Accession, Account Borrower, Chattel Paper,

1

**Composite Exhibit C**

Account, Commercial Tort Claim, Deposit Account, Document, Electronic Chattel Paper, Equipment, Fixture, Instrument, Inventory, Investment Property, Letter-of-Credit Right, Proceeds, Supporting Obligation, and Tangible Chattel Paper.

<u>Other Capitalized Terms</u>. All other capitalized terms not specifically defined herein shall have the meaning ascribed to such terms as set forth in that certain Security Agreement by and between Debtor and Creditor dated June 30, 2015.

2

**Composite Exhibit C**

EXHIBIT B

LEGAL DESCRIPTION

Parcel A:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road), thence South 30°54'28" East 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35'20" West 38.30 feet to the Westerly right-of-way line of State Road No. 15A and the Point of Beginning; thence run South 30°54'28" East 130.37 feet along said Westerly right-of-way line, thence run South 89°33'44" West 807.29 feet, thence run North 00°24'40" West 112.71 feet, thence run North 89°35'20" East 741.13 feet to the Point of Beginning.

Parcel B:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road); thence South 30°54'28" East, 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35' 20 West, 38.30 feet to the Westerly right-of-way line of State Road No. 15 A; thence run South 30°54'28" East, 130.37 feet along the Westerly right-of-way line of State Road No. 15A to the Point of Beginning; thence continue South 30°54'28" East 34.81 feet along said Westerly right-of-way line; thence run South 89°33'44" West, 1448.21 feet to the West line of said Northwest 1/4 of Section 25; thence run North 00°47'40" West, 143.00 feet along said West line of the Northwest 1/4 of Section 25; thence run North 89°35'20" East, 624.21 feet; thence run South 00°24'40" East, 112.71 feet; thence run North 89°33'44" East, 807.29 feet to the Point of Beginning.

3

**Composite Exhibit C**

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

DOC# 20150351715 B: 10948 P: 4761
07/09/2015 03:29:11 PM  Page 1 of 5
Rec Fee: $44.00
Martha O. Haynie, Comptroller
Orange County, FL
PU - Ret To: AKERMAN SENTERFITT AND EI



**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

Dudley Q. Sharp, Esq./met

**B. SEND ACKNOWLEDGEMENT TO:**

| | |
|---|---|
| Name | South Milhausen, P.A. |
| Address | 1000 Legion Place |
| Address | Suite 1200 |
| City/State/Zip | Orlando, Florida 32801 |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY **ONE** DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME |
|---|
| Golden Touch Transportation LLC |

| 1.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1.c MAILING ADDRESS Line One |
|---|
| 7350 Narcoossee Road |

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | Orlando | FL | 32822 | USA |

| 1.d TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1.e TYPE OF ORGANIZATION | 1.f JURISDICTION OF ORGANIZATION | 1.g ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | Florida | NONE ☐ |

---

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY **ONE** DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME |
|---|
| |

| 2.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2.c MAILING ADDRESS Line One |
|---|
| |

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2.d TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2.e TYPE OF ORGANIZATION | 2.f JURISDICTION OF ORGANIZATION | 2.g ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | | NONE ☐ |

---

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY **ONE** SECURED PARTY (3a OR3b)

| 3.a ORGANIZATION'S NAME |
|---|
| Harbor Community Bank |

| 3.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3.c MAILING ADDRESS Line One |
|---|
| 2222 Colonial Road |

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Suite 100 | Ft. Pierce | FL | 34950 | USA |

---

**4.** This **FINANCING STATEMENT** covers the following collateral:

See attached Exhibit "A" and "B"

---

**5. ALTERNATE DESIGNATION** (if applicable)  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
☐ AG. LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK **EXACTLY ONE BOX**

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

**Composite Exhibit C**

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM – ADDENDUM

### 8. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT

| 8a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Golden Touch Transportation LLC | | | |
| 8b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**9. MISCELLANEOUS:**

### 10. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (10a OR 10b) – Do Not Abbreviate or Combine Names

| 10.a ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 10.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 10.c MAILING ADDRESS Line One | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY | | STATE | POSTAL CODE | COUNTRY |

### 11. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEED of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (11a OR 11b)

| 11.a ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 11.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 11.c MAILING ADDRESS Line One | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY | | STATE | POSTAL CODE | COUNTRY |

**12.** This FINANCING STATEMENT covers ☐ timber to be cut or ☑ fixture filing. ☐ as-extracted collateral, or is filed as a

**15.** Additional collateral description:

**13.** Description of real estate:

**14.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16.** Check only if applicable and check only one box.

Collateral is ☐ Held in Trust
☐ Being administered by Decedent's Personal Representative

**17.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction – effective 30 years

STANDARD FORM - FORM UCC-1 ADDENDUM (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

## Composite Exhibit C

EXHIBIT "A"

1.    Debtor's name and address:
      GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company
      7350 Narcoossee Road
      Orlando, FL 32822

2.    This Security Agreement/Financing Statement covers the following types and items of
      property:        All right, title, and interest of Borrower in and to the Collateral, whether
      now owned or hereafter acquired by Borrower.

      For purposes of this Financing Statement, the following definitions shall apply:

      "Collateral" means all property of Borrower, wherever located and whether now owned
      by Borrower or hereafter acquired, including but not limited to; (a) all Inventory; (b) all
      General Intangibles; (c) all Accounts; (d) all Chattel Paper; (e) all Instruments and
      Documents and any other instrument or intangible representing payment for goods or
      services; (f) all Equipment; (g) all Investment Property; (h) all Commercial Tort Claims;
      (i) all Letter-of-Credit Rights; (j) all Deposit Accounts and funds on deposit therein,
      including but not limited to any Funding Account, Collections Account, and funds
      otherwise on deposit with or under the Control of Lender or its agents or correspondents;
      (k) all Fixtures located at or affixed to the real property known as Environmental
      Products of Florida Corporation (located at 2525 Clarcona Road, Apopka, FL 32703; and
      (l) all parts, replacements, substitutions, profits, products, Accessions, cash and non-cash
      Proceeds, and Supporting Obligations of any of the foregoing (including, but not limited
      to, insurance proceeds) in any form and wherever located.  Collateral also includes (x) all
      written or electronically recorded books and records relating to any such Collateral and
      other rights relating thereto and (y) any other real or personal property as to which
      Lender, at any time of determination, has a Lien to secure the Obligations.

      "Collections Account" means any Deposit Account maintained by Borrower with Lender
      to which collections, deposits, and other payments on or with respect to Collateral may be
      made pursuant to the terms hereof and to which only Lender shall have access to
      withdraw or otherwise direct the disposition of funds on deposit therein.

      "UCC" means the Uniform Commercial Code (or any successor statute), as adopted and
      in force in the Jurisdiction or, when the laws of any other state govern the method or
      manner of the perfection or enforcement of any Lien in any of the Collateral, the Uniform
      Commercial Code (or any successor statute) of such other state.

      Certain UCC Terms.  Any term used in this financing statement filed in connection
      herewith which is defined in the UCC and not otherwise defined in this Security
      Agreement or in any other Loan Document shall have the meaning given to the term in
      the UCC, including, without limitation, Accession, Account Borrower, Chattel Paper,

1

**Composite Exhibit C**

Account, Commercial Tort Claim, Deposit Account, Document, Electronic Chattel Paper, Equipment, Fixture, Instrument, Inventory, Investment Property, Letter-of-Credit Right, Proceeds, Supporting Obligation, and Tangible Chattel Paper.

<u>Other Capitalized Terms</u>. All other capitalized terms not specifically defined herein shall have the meaning ascribed to such terms as set forth in that certain Security Agreement by and between Debtor and Creditor dated June __, 2015.

2

**Composite Exhibit C**

EXHIBIT B

LEGAL DESCRIPTION

Parcel A:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road), thence South 30°54'28" East 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35'20" West 38.30 feet to the Westerly right-of-way line of State Road No. 15A and the Point of Beginning; thence run South 30°54'28" East 130.37 feet along said Westerly right-of-way line, thence run South 89°33'44" West 807.29 feet, thence run North 00°24'40" West 112.71 feet, thence run North 89°35'20" East 741.13 feet to the Point of Beginning.

Parcel B:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road); thence South 30°54'28" East, 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35' 20 West, 38.30 feet to the Westerly right-of-way line of State Road No. 15 A; thence run South 30°54'28" East, 130.37 feet along the Westerly right-of-way line of State Road No. 15A to the Point of Beginning; thence continue South 30°54'28" East 34.81 feet along said Westerly right-of-way line; thence run South 89°33'44" West, 1448.21 feet to the West line of said Northwest 1/4 of Section 25; thence run North 00°47'40" West, 143.00 feet along said West line of the Northwest 1/4 of Section 25; thence run North 89°35'20" East, 624.21 feet; thence run South 00°24'40" East, 112.71 feet; thence run North 89°33'44" East, 807.29 feet to the Point of Beginning.

3

**Composite Exhibit C**

DOC# 20150351714 B: 10948 P: 4751
07/09/2015 03:29:11 PM  Page 1 of 10
Rec Fee: $86.50
Deed Doc Tax: $0.00
DOR Admin Fee: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
PU - Ret To: AKERMAN SENTERFITT AND EI

THIS INSTRUMENT PREPARED BY:
Dudley Q. Sharp, Esq./met
SOUTH MILHAUSEN, P.A.
Gateway Center
1000 Legion Place, Suite 1200
Orlando, Florida 32801
File 6520-6

## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS COLLATERAL ASSIGNMENT OF LEASES AND RENTS (the "Assignment") is made effective as of the ___ day of June, 2015, by GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company (the "Assignor"), with an address for purposes of this Assignment of 7350 Narcoossee Road, Orlando, Florida 32822, to and in favor of HARBOR COMMUNITY BANK (the "Assignee"), with an address for purposes of this Assignment of 2222 Colonial Road, Suite 101, Fort Pierce, FL 34950.

## W I T N E S S E T H:

WHEREAS, contemporaneously herewith, Assignor has executed and delivered to the Assignee that certain Promissory Note in the principal sum of SEVEN HUNDRED FIFTEEN THOUSAND AND 00/100 DOLLARS ($715,000.00) (the "Note"), secured by that certain Mortgage and Security Agreement (the "Mortgage") given by Assignor in favor of Assignee on the premises of the Assignor in Orange County, Florida, more particularly described in Exhibit "A" annexed hereto, together with all buildings and improvements now or hereafter constructed thereon (all of such premises being collectively referred to as the "Mortgaged Premises"); and

WHEREAS, as additional security for the Note and the obligations of the Assignor thereunder, the Assignor has executed and delivered to the Assignee this Assignment;

NOW, THEREFORE, for value received and as security for the payment of said obligations of the Assignor, for itself and for its successors and assigns, Assignor does hereby transfer, assign and deliver unto the Assignee, its successors and assigns, all of the right, title and interest of the Assignor in and to: (1) all leases, subleases, tenancies and any other agreement affecting the use of the Mortgaged Premises, whether written or oral, now or hereafter existing with respect to any portion or portions of the Mortgaged Premises, together with any renewals or extensions therefor (all of which are collectively referred to as the "Assigned Leases"); (2) all rents and other payments of every kind due or payable and to become due or payable to the Assignor by virtue of the Assigned Leases, or otherwise due and payable and to become due or payable to the Assignor as the result of any use, possession or occupancy of any portion or portions of the Mortgaged Premises; (3) all right, title and interest of the Assignor in and to all guarantees of the

1

**Exhibit D**

Assigned Leases; and (4) any award made in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns, until such time as the indebtedness secured by the Mortgage shall have been paid in full, for the purpose of further and collaterally securing: (1) payment of the indebtedness evidenced by the Note together with the interest of said indebtedness; (2) payment of all other sums, with interest thereon, to become due and payable to the Assignee hereunder or under the provisions of the Mortgage and the Note or any other obligation of the Assignor to the Assignee now or hereafter existing; and (3) performance and discharge of each and every obligation, covenant and agreement of the Assignor contained herein, or in the Note, Mortgage or any other obligation of the Assignor to the Assignee now or hereafter existing (this Assignment, the Note, the Mortgage, and any other obligations being collectively referred to as the "Obligations").

This instrument of Assignment is delivered and accepted upon the following terms and conditions:

1.      Assignor's License to Operate if No Default.  So long as no default shall exist under the Obligations, the Assignor shall have a license to manage and operate the Mortgaged Premises and to collect, receive and apply for its own account all rents, issues and profits accruing by virtue of the Assigned Leases, and to execute and deliver proper receipt and acquittances therefore, provided, however, that without the written consent of the Assignee, the Assignor shall not collect any installment of rent in advance of the respective dates prescribed in the Assigned Leases for the payment thereof other than one (1) month advance rental in the form of a security deposit for the last month of any lease term (hereinafter referred to as "Permitted Advance Rental Payments").

2.      Assignee's Right in Event of Default.

2.1     Immediately upon the occurrence of any default under the Obligations, and until such default shall have been cured as hereinafter defined, the license mentioned in the foregoing Paragraph 1 hereof shall cease and terminate, and in such event the Assignee is hereby expressly and irrevocably authorized to enter and take possession of the Mortgaged Premises by actual physical possession, or by written notice served personally upon or sent by registered mail to the Assignor as the Assignee may elect, without further authorization, notice or demand (except as otherwise specifically provided in the Note) and without the commencement of any action to foreclose the Mortgage or to exercise its power of sale thereunder.

2.2     The Assignor does hereby constitute and appoint the Assignee, following such entry and taking of possession, irrevocably, with full power of substitution and revocation, its true and lawful attorney, for it and in its name, place and stead, to do and perform any or all of the following actions, as fully, to all intents and purposes, as it could do if personally

2

**Exhibit D**

present, hereby ratifying and confirming all that its said attorney or its substitute shall lawfully do or cause to be done by virtue hereof:

(a)     Manage and operate the Mortgaged Premises or any part thereof;

(b)     Lease any part or parts thereof for such periods of time, and upon such terms and conditions as the Assignee may, in its sole discretion, deem proper;

(c)     Enforce, cancel or modify any of the Assigned Leases;

(d)     Demand, collect, sue for, attach, levy, recover, receive, compromise and adjust, and make, execute and deliver receipts and releases for all rents, issues, profits and other amounts that may then be or may thereafter become due, owing or payable with respect to the Mortgaged Premises or any part thereof from any present or future lessees, tenants, subtenants or occupants thereof;

(e)     Institute, prosecute to completion or compromise and settle, all summary proceedings, actions for rent or for removing any and all lessees, tenants, subtenants or occupants of the Mortgaged Premises or any part or parts thereof;

(f)     Enforce or enjoin or restrain the violation of any of the terms, provisions and conditions of any lease or leases, now or hereafter affecting the Mortgaged Premises or any part thereof;

(g)     Make such repairs and alterations to the Mortgaged Premises as the Assignee may, in its reasonable discretion, deem proper not inconsistent with the terms of the Assigned Leases;

(h)     Pay, from and out of rents, issues and profits collected in respect of the Mortgaged Premises or any part thereof, or from or out of any other funds, the rent and all other charges required to be paid under any ground lease on which the Mortgage may constitute a lien, any taxes, assessments, water rates, sewer rates, or other governmental charges levied, assessed or imposed against the Mortgaged Premises, or any portion thereof, and also any and all other charges, costs and expenses which may be necessary or advisable for the Assignee to pay in the management or operation of the Mortgaged Premises, including (without limiting the generality of any rights, powers, privileges and authority hereinbefore or hereafter conferred) the costs of such repairs and alterations, commissions for renting the Mortgaged Premises or any portions thereof and legal expenses in enforcing claims, preparing papers or for any other services that may be required; and

3

**Exhibit D**

(i)     Generally do, execute and perform any other act, deed, matter or thing whatsoever that ought to be done, executed and performed in and about or with respect to the Mortgaged Premises, as fully as the Assignor might do; provided, however, that any action or failure or refusal to act by the Assignee under this subparagraph 2.2 shall be at its election and without any liability on its part.

2.3     The Assignee shall apply the net amount of rents, issues and profits received by it from the Mortgaged Premises, after payment of all proper costs and charges (including any liability, loss, expense or damage hereinafter referred to in Paragraph 5 hereof), first to the payment, when due, of the installments of interest payable under the Note and thereafter to the payment of principal thereunder. Any of such funds remaining after such application shall be paid as soon as reasonably practicable by the Assignee to the Assignor or paid over to such persons as the Assignor may designate to the Assignee in writing.

2.4     The Assignee shall be accountable to the Assignor only for moneys actually received by the Assignee pursuant to the Assignment and the acceptance of this Assignment shall not constitute a satisfaction of any indebtedness, liability or obligations or any part thereof, now or hereafter owed by the Assignor to the Assignee, except to the extent of amounts actually received and applied by the Assignee on account of the same.

2.5     The rights and powers of the Assignee hereunder shall continue and remain in full force and effect until all amounts secured hereby, including any deficiency resulting from foreclosure sale, are paid in full, and shall continue after commencement of foreclosure and after foreclosure sale and until expiration of the equity of redemption, notwithstanding sale of the Mortgaged Premises to a purchaser other than the Assignee. Assignee shall not be liable to Assignor or anyone claiming under or through Assignor by reason of anything done or left undone by Assignee hereunder.

2.6     For the purposes of this Paragraph 2, a default shall be deemed to be cured only when the Assignor shall have paid in full all sums owing and past due and/or shall have performed all other terms, covenants and conditions, the failure in the performance of which shall terminate the license hereinabove mentioned in Paragraph 1 hereof.

3.     Attornment by Lessees in Event of Default. The Assignor hereby irrevocably directs each lessee under each Assigned Lease, upon demand and notice from the Assignee of any default under any of the Obligations to pay the Assignee, all rents, issues and profits accruing or due under its Assigned Lease from and after the receipt of such demand and notice. Any lessee making such payment to the Assignee shall be under no obligation to inquire into or determine the actual existence of any such default claimed by the Assignee.

4

**Exhibit D**

4.      Covenants of Assignor. The Assignor, for itself and for its successors and assigns, covenant and warrant as follows:

(a)      That each of the Assigned Leases now or hereafter in effect is and shall be valid and subsisting leases and that there are, to the extent ascertainable to the Assignor, no defaults on the part of any of the parties thereto;

(b)      That the Assignor has not sold, assigned, transferred, mortgaged or pledged any of the rents, issues or profits from the Mortgaged Premises or any part thereof, whether now or hereafter to become due, to any person, firm or corporation other than the Assignee;

(c)      That no rents, issues or profits of the Mortgaged Premises, or any part thereof, becoming due subsequent to the date hereof have been collected (other than Permitted Advance Rental Payments) nor has payment of any of the same been anticipated, waived, released, discounted or otherwise discharged or compromised;

(d)      That the Assignor will not assign, pledge or otherwise encumber any of the Assigned Leases or any of the rents thereunder unless the prior written consent of the Assignee shall have been obtained thereto and unless the instrument creating such assignment, pledge or encumbrance shall expressly state that the same is subject to this Assignment;

(e)      That the Assignor will not, without in each case having obtained the prior written consent of the Assignee thereto, amend or modify, directly or indirectly, in any respect whatsoever, cancel, terminate or accept any surrender of any Assigned Lease, other than an Assigned Lease affecting less than ten percent (10%) of the net rentable area of the Mortgaged Premises (hereinafter referred to as an "Adjustable Assigned Lease");

(f)      That the Assignor will not waive or give any consent with respect to any default or variation in the performance of any of the terms, covenants and conditions on the part of any lessee, sublessee, tenant or other occupant, to be performed under any of the Assigned Leases other than an Adjustable Assigned Lease, but will at all times take proper steps to enforce all of the provisions and conditions thereof;

(g)      That the Assignor will not collect or receive, without in each case having obtained the prior written consent of the Assignee thereto from any such lessee, sublessee, tenant or other occupant, any installment of rent in advance of the respective dates prescribed in the Assigned Leases, except for Permitted Advance Rental Payments;

(h)      That the Assignor will perform and observe, or cause to be performed and observed, all of the terms, covenants and conditions on its part to be performed and observed with respect to each of the Assigned Leases;

5

**Exhibit D**

(i)    That the Assignor will, upon written request by the Assignee, while this Assignment remains in force and effect, serve such written notices upon any lessee, sublessee, tenant or other occupant of any portion of the Mortgaged Premises concerning this Assignment, or include among the written provisions of any instrument hereafter creating any such lease, sublease, tenancy or right of occupancy, reference to this Assignment, and make, execute and deliver all such powers of attorney, instruments of pledge or assignment, and such other instruments or documents as the Assignee may reasonably request at any time for the purpose of securing its rights hereunder;

(j)    That at all times during which this Assignment shall be in effect, the Assignor will use its best efforts to keep the Mortgaged Premises fully rented at the highest possible rental obtainable; and

(k)    That the Assignor will notify the Assignee promptly when any Assigned Lease is hereafter executed, extended, renewed, amended or modified and that it will furnish to the Assignee, on demand, true copies of all Assigned Leases hereafter executed and true copies of each agreement or letter affecting the renewal, amendment or modification of any Assigned Lease.

5.    Indemnification.

5.1    The Assignor hereby agrees to indemnify and hold the Assignee harmless (a) against and from any and all liability, loss, damage and expense, including reasonable attorneys' fees, which they may or shall incur under or in connection with any of the Assigned Leases, or by reason of any of the Obligations, or by reason of any action taken by the Assignee under any of the Obligations, including without limitation any action which the Assignee in its discretion may take to protect its interest in the Mortgaged Premises, including without limitation the making of advances and the entering into of any action or proceeding arising out of or connected with the Assigned Leases or the Obligations; and (b) against and from any and all claims and demands whatsoever which may be asserted against the Assignor by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants and conditions contained in any of the Assigned Leases.

5.2    Should the Assignee incur any such liability, loss, damage, or expense, the amount thereof, together with interest thereon at the highest lawful rate of interest per annum, shall be payable by the Assignor to the Assignee immediately upon demand, or at the option of the Assignee, the Assignee may reimburse itself therefor out of any rents, issues or profits of the Mortgaged Premises collected by the Assignee.

5.3    Nothing contained herein shall operate or be construed to obligate the Assignee to perform any of the terms, covenants or conditions contained in any Assigned Lease, or to

6

**Exhibit D**

take any measures, legal or otherwise, to enforce collection of any of said rents or other payments, or otherwise to impose any obligation upon the Assignee with respect to any of said leases, including but not limited to any obligation arising out of any covenant or quiet enjoyment therein contained, in the event that any lessee shall have been joined as a party defendant in any action to foreclose the Mortgage and the estate of such lessee shall have been thereby terminated.

5.4 Prior to actual entry into or the taking of possession of the Mortgaged Premises by the Assignee, this Assignment shall not operate to place upon the Assignee any responsibility for the operation, control, care, management or repair of the Mortgaged Premises, and the execution of this Assignment by the Assignor shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Premises is and shall be that of the Assignor prior to such actual entry and taking of possession.

6. Failure of Remedies. Failure of the Assignee to avail itself of any of the terms, covenants and conditions of this Assignment for any period of time, or at any time or times, shall not be construed or deemed to be a waiver of any of its rights hereunder. The rights and remedies of the Assignee under this Assignment are cumulative and are not in lieu of but are in addition to any other rights and remedies which the Assignee shall have under or by virtue of any other of the Obligations. The rights and remedies of the Assignee hereunder may be exercised from time to time and as often as such exercise is deemed expedient.

7. Assignment by Assignee. The Assignee shall have the right to assign to any subsequent holder of the Mortgage, or to any person acquiring title to the Mortgaged Premises, the Assignor's right, title and interest in any lease hereby or hereafter assigned, subject, however, to the provisions of this Assignment. After the Assignor shall have been barred and foreclosed of all right, title and interest and equity of redemption in said Mortgaged Premises, no assignee of the Assignor's interest in said leases shall be liable to account to the Assignor for any rents, income, revenue, issues or profits thereafter accruing.

8. Termination of Assignment. Upon payment in full of all indebtedness secured by the Mortgage, as evidenced by a recorded Satisfaction or Release of Mortgage, as well as any sums which may be payable hereunder, this Assignment shall become null and void and of no effect and; in that event, upon the request of the Assignor, the Assignee covenants to execute and deliver to the Assignor instruments effective to evidence the termination of this Assignment and/or the reassignment to the Assignor of the rights, powers and authority granted herein.

9. No Merger of Assigned Leases. As against the Assignee, at all times during which this Assignment shall be in effect, there shall be no merger of the Assigned Leases or the leasehold estates created thereby with the fee estate in the Mortgaged Premises by reason of the fact that the Assigned Leases or any interest therein may be held by or for the account of any person, firm

7

**Exhibit D**

or corporation which may be or become the owner of said fee estate, unless the Assignee shall consent in writing to said merger.

        10.    <u>Notice</u>. Any notice, demand, request or other communication given hereunder or in connection herewith ("Notice") shall be deemed sufficient if in writing and sent by registered or certified mail, postage prepaid, return receipt requested, addressed to the party to receive such Notice at its address first set forth above or at such other address as such party may hereafter designate by Notice given in like fashion.  Notices shall be deemed given upon the earlier of actual receipt by the addressee or when delivery is attempted at the address specified herein and delivery is refused. Notwithstanding the foregoing, routine communications such as ordinary distribution checks, copies of documents, etc., may be sent by ordinary first class mail.

        11.    <u>Miscellaneous Provisions</u>.

        11.1  Whenever the context so requires, references herein to the neuter gender shall include the masculine and/or feminine gender, and the singular number shall include the plural.

        11.2  All of the provisions of this Assignment shall be deemed and construed to be "conditions" and "covenants" as though the words specifically expressing or importing covenants and conditions were used in each separate provision hereof.

        11.3  This Assignment is being delivered and is intended to be performed in the State of Florida and shall be construed and enforced in accordance with and governed by the laws of such state.

        11.4  No change, amendment, modification, cancellation or discharge hereof, or of any part hereof, shall be valid unless the Assignee shall have consented thereto in writing.

        11.5  In the event there is any conflict between the terms and provisions of the Mortgage and the terms and provisions of this Assignment, the terms and provisions of this Assignment shall prevail.

        11.6  The terms, covenants and conditions contained herein shall inure to the benefit of and bind the Assignee and the Assignor and their respective successors and assigns or executors, administrators, successors and assigns, as the case may be.

        11.7  The captions of this Assignment are for convenience and reference only and neither in any way define, limit or describe the scope or interest of this Assignment nor in any way affect this Assignment.

8

**Exhibit D**

11.8  In case any one or more of the provisions contained in this Assignment are or shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof and thereof, but each shall be construed as if such invalid, illegal or unenforceable provision had never been included.

IN WITNESS WHEREOF, the Assignor has caused these presents to be executed by them on the day and year first above written.

"Assignor"

Signed, sealed and delivered
in the presence of:

GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company

Witness
Print Name: DARREN OliVERio

By: _____
    Vivien Barzo
As Its:  Manager

Witness
Print Name: Mary Ellen Taft

STATE OF FLORIDA

COUNTY OF ORANGE

The foregoing instrument was acknowledged before me this 30 day of June, 2015, by Vivien Barzo, as Manager of GOLDEN TOUCH TRANSPORTATION, LLC, a Florida limited liability company, who either (a) ____ is personally known to me, or (b) ✓ has produced Florida Drivers License as identification.

NOTARY PUBLIC
Print Name:
My Commission Expires:

M.E. TAFT
Notary Public - State of Florida
My Comm. Expires Aug 5, 2018
Commission # FF 130004

9

**Exhibit D**

EXHIBIT "A"

Legal Description

Parcel A:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road), thence South 30°54'28" East 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35'20" West 38.30 feet to the Westerly right-of-way line of State Road No. 15A and the Point of Beginning; thence run South 30°54'28" East 130.37 feet along said Westerly right-of-way line, thence run South 89°33'44" West 807.29 feet, thence run North 00°24'40" West 112.71 feet, thence run North 89°35'20" East 741.13 feet to the Point of Beginning.

Parcel B:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road); thence South 30°54'28" East, 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35' 20 West, 38.30 feet to the Westerly right-of-way line of State Road No. 15 A; thence run South 30°54'28" East, 130.37 feet along the Westerly right-of-way line of State Road No. 15A to the Point of Beginning; thence continue South 30°54'28" East 34.81 feet along said Westerly right-of-way line; thence run South 89°33'44" West, 1448.21 feet to the West line of said Northwest 1/4 of Section 25; thence run North 00°47'40" West, 143.00 feet along said West line of the Northwest 1/4 of Section 25; thence run North 89°35'20" East, 624.21 feet; thence run South 00°24'40" East, 112.71 feet; thence run North 89°33'44" East, 807.29 feet to the Point of Beginning.

10

**Exhibit D**

**COMMERCIAL PROMISSORY NOTE**

**Harbor Community Bank**
**100 Park Place Blvd Suite 101**
**Kissimmee, Florida 34741**
**(407)370-7718**
**www.harborcb.com**

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | LOAN TERM | MATURITY DATE |
|---|---|---|---|---|
| ████2861 | September 8, 2016 | $215,000.00 | 166 months | July 8, 2030 |

**LOAN PURPOSE: Fund cost necessary to secure CO and payment of 2015 RE taxes**

**BORROWER INFORMATION**

**Golden Touch Transportation, LLC**
**7330 Narcoossee Rd.**
**Orlando, FL 32832**

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note."

**LENDER.** "Lender" means **Harbor Community Bank** whose address is **100 Park Place Blvd Suite 101**, Kissimmee, Florida 34741 , its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of **Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00)** and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This Note will be paid according to the following schedule: **1** payment of interest only on **October 8, 2016**. The payment will be in the amount of **$779.37**. This will be followed by **3** consecutive payments of interest only beginning on **November 8, 2016** and continuing on the same day of each month thereafter. This will be followed by **161** consecutive payments of principal and interest beginning on **February 8, 2017** and continuing on the same day of each month thereafter. This will be followed by **1** payment of principal and interest on **July 8, 2030**. The effect of an interest rate change on payments is described in the section "INTEREST RATE AND SCHEDULED PAYMENT CHANGES" below. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date. All payments received by the Lender from the Borrower for application to this Note may be applied to the Borrower's obligations under this Note in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES. The Interest will begin to accrue on September 8, 2016.** The initial variable interest rate on this Note will be **4.350%** per annum. This interest rate may change on **September 8, 2021**, and every **60** months thereafter. Each date on which the interest rate may change is called the "Change Date." Beginning with the first Change Date, Lender will calculate the new interest rate based on **Treasury Constant Maturity 5 Year** in effect on the Change Date (the "Index") plus **3.500** percentage points (the "Margin"). The sum of the Index and Margin will be rounded to the next highest **0.12500**. If the Index is not available at that time, Lender will choose a new Index which is based on comparable information. The Index is used solely to establish a base from which the actual rate of interest payable under this Note will be calculated, and is not a reference to any actual rate of interest charged by any lender to any particular borrower. The interest rate will never be greater than **17.000%**.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rate **may result in a change of payment.** Interest on this Note is calculated on an **Actual/360** day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note. The unpaid balance of this loan shall, after an Event of Default exists under this Note or any other agreement related to the loan, be subject to a default rate of interest equal to **17.000%** per annum, and after the Maturity Date, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to **17.000%** per annum.

**LATE PAYMENT CHARGE.** If any required payment is more than **10** days late, then at Lender's option, Lender will assess a late payment charge of **$5.00** or **5%** of the amount of the regularly scheduled payment then past due, whichever is greater.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**SECURITY TO NOTE.** Security (the "Collateral") for this Note is granted pursuant to the following security document(s):

- Assignment of Leases and Rents dated **September 8, 2016**, executed by **Golden Touch Transportation, LLC**, evidencing an assignment of leases and rents on the property located at **7340 Narccoossee Road Orlando FL 32822.**

© 2004-2015 Compliance Systems, Inc. 05AD-2363 - 2015.12.2.850
Commercial Promissory Note - DL4006

www.compliancesystems.com

Initials

**Exhibit E**

- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of **$215,000.00**, dated **September 8, 2016**, executed by **Golden Touch Transportation, LLC**, evidencing a lien on the property located at **7340 Narcoossee Road Orlando FL 32822**.

**GUARANTY.** In support of this transaction, a Guaranty dated **September 8, 2016** has been executed by **Vivien Barzo**; and a Guaranty dated **September 8, 2016** has been executed by **Saad Ahmed**.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**DISHONORED ITEM FEE.** If Borrower makes a payment on the loan with a check or preauthorized charge which is later dishonored, a fee in the amount of **$15.00** will be charged.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments and any other documents or agreements executed in connection with this Note whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents executed in connection with this Note; (c) any default by Borrower under the terms of any Related Documents in favor of Lender; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents in favor of Lender entered into or delivered in connection with this Note terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of Florida except to the extent that federal law controls.

**Exhibit E**

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**WAIVER OF JURY TRIAL. All parties to this Note hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document or agreement executed or delivered in connection with this Note or the Related Documents.**

**DOCUMENTARY STAMP TAX.** The Florida Documentary Stamp Tax, as required by law, has been paid.

**By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.**

**Golden Touch Transportation, LLC**

X _____ (Seal)        X _____ (Seal)
By: **Vivien Barzo**              Date        By: **Saad Ahmed**               Date
Its: **Manager**                                  Its: **Manager**

**LENDER: Harbor Community Bank**

_____ (Seal)
By: **Darren Oliverio**         Date
Its: **Commercial Loan Officer**

**Exhibit E**

```
DOC# 20160478250
09/12/2016 10:36:18 AM  Page 1 of 8
Rec Fee: $69.50
Deed Doc Tax: $0.00
DOR Admin Fee: $0.00
Intangible Tax: $430.00
Mortgage Stamp: $752.50
Martha O. Haynie, Comptroller
Orange County, FL
MB - Ret To: GRIMSLEY LAW FIRM P L
```

(Space Above This Line For Recording Data)

## COMMERCIAL REAL ESTATE MORTGAGE

This COMMERCIAL REAL ESTATE MORTGAGE ("Security Instrument") is made on **September 8, 2016** between the mortgagor(s) **Golden Touch Transportation, LLC**, a Florida Limited Liability Company, whose address is **7330 Narcoossee Rd., Orlando**, Florida **32832** ("Mortgagor"), and **Harbor Community Bank** whose address is **200 South Indian River Drive, Fort Pierce**, Florida **34950** ("Lender"), which is organized and existing under the laws of the State of Florida. Mortgagor in consideration of loans extended by Lender in the principal amount of **Two Hundred Fifteen Thousand and 00/100 Dollars** (U.S. **$215,000.00**) and for other valuable consideration, the receipt of which is acknowledged, hereby mortgages, grants and conveys to Lender, its successors and assigns, forever, the following described property located in the **County of Orange**, State of Florida:

Address: **7340 Narccoossee Road, Orlando**, Florida 32822
Legal Description: **See attached "Exhibit A"**
Parcel ID/Sidwell Number: **25-23-30-0000-00-055**

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water (whether groundwater, subterranean or otherwise), water rights (whether riparian, appropriate or otherwise, and whether or not appurtenant to the above-described real property), wells, well permits, ditches, ditch rights, reservoirs, reservoir rights, reservoir sites, storage rights, dams and water stock that may now, or at any time in the future, be located on and/or used in connection with the above-described real property, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith (hereinafter called the "Property").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Indebtedness and Security Instrument, whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Security Instrument secures the principal amount shown above as may be evidenced by a promissory note or notes of even or subsequent date hereto and every other indebtedness of any and every kind now or hereafter owing from **Golden Touch Transportation, LLC to Harbor Community Bank**, howsoever

© 2004-2015 Compliance Systems, Inc. 3914-0590 - 2015.12.2.1036
Commercial Real Estate Security Instrument - DL4007                      Page 1 of 7                      www.compliancesystems.com

Initials

**Exhibit F**

created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter all referred to as the "Indebtedness"). Unless expressly stated herein to the contrary, nothing contained in this Security Instrument obligates Lender to make any future advances under the note(s) of even date herewith or to extend further credit (under separate notes or in any other manner).

**WARRANTIES.** Mortgagor, for itself, its heirs, personal representatives, successors, and assigns, represents, warrants, covenants and agrees with Lender, its successors and assigns, as follows:

**Performance of Obligations.** Mortgagor promises to perform all terms, conditions, and covenants of this Security Instrument and Related Documents in accordance with the terms contained therein.

**Defense and Title to Property.** At the time of execution and delivery of this instrument, Mortgagor is lawfully seised of the estate hereby conveyed and has the exclusive right to mortgage, grant, convey and assign the Property. Mortgagor covenants that the Property is unencumbered and free of all liens, except for encumbrances of record acceptable to Lender. Further, Mortgagor covenants that Mortgagor will warrant and defend generally the title to the Property against any and all claims and demands whatsoever, subject to the easements, restrictions, or other encumbrances of record acceptable to Lender, as may be listed in the schedule of exceptions to coverage in any abstract of title or title insurance policy insuring Lender's interest in the Property.

**Condition of Property.** Mortgagor promises at all times to preserve and to maintain the Property and every part thereof in good repair, working order, and condition and will from time to time, make all needful and proper repairs so that the value of the Property shall not in any way be impaired.

**Removal of any Part of the Property.** Mortgagor promises not to remove any part of the Property from its present location, except for replacement, maintenance and relocation in the ordinary course of business.

**Alterations to the Property.** Mortgagor promises to abstain from the commission of any waste on or in connection with the Property. Further, Mortgagor shall make no material alterations, additions or improvements of any type whatsoever to the Property, regardless of whether such alterations, additions or improvements would increase the value of the Property, nor permit anyone to do so except for tenant improvements and completion of items pursuant to approved plans and specifications, without Lender's prior written consent, which consent may be withheld by Lender in its sole discretion. Mortgagor will comply with all laws and regulations of all public authorities having jurisdiction over the Property including, without limitation, those relating to the use, occupancy and maintenance thereof and shall upon request promptly submit to Lender evidence of such compliance.

**Due on Sale - Lender's Consent.** Mortgagor shall not sell, further encumber or otherwise dispose of, except as herein provided, any or all of its interest in any part of or all of the Property without first obtaining the written consent of Lender. If any encumbrance, lien, transfer or sale or agreement for these is created, Lender may declare immediately due and payable, the entire balance of the Indebtedness.

**Insurance.** Mortgagor promises to keep the Property insured against such risks and in such form as may within the sole discretion of Lender be acceptable, causing Lender to be named as loss payee or if requested by Lender, as mortgagee. The insurance company shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. All insurance policies must provide that Lender will get a minimum of **10** days notice prior to cancellation. At Lender's discretion, Mortgagor may be required to produce receipts of paid premiums and renewal policies. If Mortgagor fails to obtain the required coverage, Lender may do so at Mortgagor's expense. Mortgagor hereby directs each and every insurer of the Property to make payment of loss to Lender with the proceeds to be applied, only at Lender's option, to the repair and replacement of the damage or loss or to be applied to the Indebtedness with the surplus, if any, to be paid by

**Exhibit F**

Lender to Mortgagor. And in the event of a casualty to the Property, Lender shall have the option to determine whether to apply the proceeds to the loan balance whether or not then due.

**Payment of Taxes and Other Applicable Charges.** Mortgagor promises to pay and to discharge liens, encumbrances, taxes, assessments, lease payments and any other charges relating to the Property when levied or assessed against Mortgagor or the Property.

**Environmental Laws and Hazardous or Toxic Materials.** Mortgagor and every tenant have been, are presently and shall continue to be in strict compliance with any applicable local, state and federal environmental laws and regulations. Further, neither Mortgagor nor any tenant shall manufacture, store, handle, discharge or dispose of hazardous or toxic materials as may be defined by any state or federal law on the Property, except to the extent the existence of such materials has been presently disclosed in writing to Lender. Mortgagor will immediately notify Lender in writing of any assertion or claim made by any party as to the possible violation of applicable state and federal environmental laws including the location of any hazardous or toxic materials on or about the Property. Mortgagor indemnifies and holds Lender harmless from, without limitation, any liability or expense of whatsoever nature incurred directly or indirectly out of or in connection with: (a) any environmental laws affecting all or any part of the Property or Mortgagor; (b) the past, present or future existence of any hazardous materials in, on, under, about, or emanating from or passing through the Property or any part thereof or any property adjacent thereto; (c) any past, present or future hazardous activity at or in connection with the Property or any part thereof; and (d) the noncompliance by Mortgagor or Mortgagor's failure to comply fully and timely with environmental laws.

**Financial Information.** Mortgagor agrees to supply Lender such financial and other information concerning its affairs and the status of any of its assets as Lender, from time to time, may reasonably request. Mortgagor further agrees to permit Lender to verify accounts as well as to inspect, copy and to examine the books, records and files of Mortgagor.

**Lender's Right to Enter.** Lender or Lender's agents shall have the right and access to inspect the Property at all reasonable times in order to attend to Lender's interests and ensure compliance with the terms of this Security Instrument. If the Property, or any part thereof, shall require inspection, repair or maintenance which Mortgagor has failed to provide, Lender, after reasonable notice, may enter upon the Property to effect such obligation; and the cost thereof shall be added to the Indebtedness and paid on Lender's demand by Mortgagor.

**ASSIGNMENT OF LEASES AND RENTS.** As additional security for the payment of the Indebtedness and the performance of the covenants contained herein, Mortgagor hereby assigns and transfers over to Lender all rents, income and profits ("Rents") under any present or future leases, subleases or licenses of the Property, including any guaranties, extensions, amendments or renewals thereof, from the use of the Property. So long as Mortgagor is not in default, Mortgagor may receive, collect and enjoy all Rents accruing from the Property, but not more than one month in advance of the due date. Lender may also require Mortgagor, tenant and any other user of the Property to make payments of Rents directly to Lender. However, by receiving any such payments, Lender is not, and shall not be considered, an agent for any party or entity. Any amounts collected may, at Lender's sole discretion, be applied to protect Lender's interest in the Property, including but not limited to the payment of taxes and insurance premiums and to the Indebtedness. At Lender's sole discretion, all leases, subleases and licenses must first be approved by Lender.

**CONDEMNATION.** Mortgagor shall give Lender notice of any action taken or threatened to be taken by private or public entities to appropriate the Property or any part thereof, through condemnation, eminent domain or any other action. Further, Lender shall be permitted to participate or intervene in any of the above described proceedings in any manner it shall at its sole discretion determine. Lender is hereby given full power, right and authority to receive and receipt for any and all damages awarded as a result of the full or partial taking or appropriation and in its sole discretion, to apply said awards to the Indebtedness, whether or not then due or

**Exhibit F**

otherwise in accordance with applicable law. Unless Lender otherwise agrees in writing, any application of proceeds to the Indebtedness shall not extend or postpone the due date of the payments due under the Indebtedness or change the amount of such payments.

**MORTGAGOR'S ASSURANCES.** At any time, upon a request of Lender, Mortgagor will execute and deliver to Lender, and if appropriate, cause to be recorded, such further mortgages, assignments, assignments of leases and rents, security agreements, pledges, financing statements, or such other document as Lender may require, in Lender's sole discretion, to effectuate, complete and to perfect as well as to continue to preserve the Indebtedness, or the lien or security interest created by this Security Instrument.

**ATTORNEY-IN-FACT.** Mortgagor appoints Lender as attorney-in-fact on behalf of Mortgagor. If Mortgagor fails to fulfill any of Mortgagor's obligations under this Security Instrument or any Related Documents, including those obligations mentioned in the preceding paragraph, Lender as attorney-in-fact may fulfill the obligations without notice to Mortgagor. This power of attorney shall not be affected by the disability of the Mortgagor.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Security Instrument (each an "Event of Default"):

    (a)   Failure to make required payments when due under Indebtedness;

    (b)   Failure to perform or keep any of the covenants of this Security Instrument or a default under any of the Related Documents;

    (c)   The making of any oral or written statement or assertion to Lender that is false or misleading in any material respect by Mortgagor or any person obligated on the Indebtedness;

    (d)   The death, dissolution, insolvency, bankruptcy or receivership proceeding of Mortgagor or of any person or entity obligated on the Indebtedness;

    (e)   Any assignment by Mortgagor for the benefit of Mortgagor's creditors;

    (f)   A material adverse change occurs in the financial condition, ownership or management of Mortgagor or any person obligated on the Indebtedness; or

    (g)   Lender deems itself insecure for any reason whatsoever.

**REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, Lender may, without demand or notice, pay any or all taxes, assessments, premiums, and liens required to be paid by Mortgagor, effect any insurance provided for herein, make such repairs, cause the abstracts of title or title insurance policy and tax histories of the Property to be certified to date, or procure new abstracts of title or title insurance and tax histories in case none were furnished to it, and procure title reports covering the Property, including surveys. The amounts paid for any such purposes will be added to the Indebtedness and will bear interest at the rate of interest otherwise accruing on the Indebtedness until paid. In the event of foreclosure, the abstracts of title or title insurance shall become the property of Lender. All abstracts of title, title insurance, tax histories, surveys, and other documents pertaining to the Indebtedness will remain in Lender's possession until the Indebtedness is paid in full.

IN THE EVENT OF THE SALE OF THIS PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A SECURITY INSTRUMENT BY ADVERTISEMENT, AS PROVIDED BY APPLICABLE LAW, OR IN THE EVENT LENDER EXERCISES ITS RIGHTS UNDER THE ASSIGNMENT OF LEASES AND RENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE, OR TO ANY JUDICIAL HEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.

Upon the occurrence of an Event of Default, Lender may, without notice unless required by law, and at its option, declare the entire Indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to cause the Property to be sold at public auction, and to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds of the sale to retain the sums then due hereunder and all costs and charges of the sale, including attorneys' fees, rendering any surplus to the party or parties entitled to it. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure

Initials

**Exhibit F**

hereof may, at the option of Lender, be made en masse. The commencement of proceedings to foreclose this Security Instrument in any manner authorized by law shall be deemed as exercise of the above option.

Upon the occurrence of an Event of Default, Lender shall immediately be entitled to make application for and obtain the appointment of a receiver for the Property and of the earnings, income, issue and profits of it, with the powers as the court making the appointments confers. Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor.

**NO WAIVER.** No delay or failure of Lender to exercise any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege nor shall any single or partial exercise thereof preclude the exercise of any right, remedy, power or privilege. No Lender delay or failure to demand strict adherence to the terms of this Security Instrument shall be deemed to constitute a course of conduct inconsistent with Lender's right at any time, before or after an event of default, to demand strict adherence to the terms of this Security Instrument and the Related Documents.

**JOINT AND SEVERAL LIABILITY.** If this Security Instrument should be signed by more than one person, all persons executing this Security Instrument agree that they shall be jointly and severally bound, where permitted by law.

**SURVIVAL.** Lender's rights in this Security Instrument will continue in its successors and assigns. This Security Instrument is binding on all heirs, executors, administrators, assigns and successors of Mortgagor.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Lender to any party is considered effective: (i) when it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means. Any such notice shall be addressed to the party given at the beginning of this Security Instrument unless an alternative address has been provided to Lender in writing. To the extent permitted by law, Mortgagor waives notice of Lender's acceptance of this Security Instrument, defenses based on suretyship, any defense arising from any election by Lender under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Lender is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, MORTGAGOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO LENDER EXERCISING ITS RIGHTS UNDER THIS SECURITY INSTRUMENT.**

**WAIVER OF APPRAISEMENT RIGHTS.** Mortgagor waives all appraisement rights relating to the Property to the extent permitted by law.

**LENDER'S EXPENSES.** Mortgagor agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the Indebtedness, its Security Instrument or in the event Lender is made party to any litigation because of the existence of the Indebtedness or this Security Instrument, as well as court costs, collection charges and reasonable attorneys' fees and disbursements.

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Security Instrument or any of Lender's rights under this Security Instrument without notice to Mortgagor. Mortgagor may not assign this Security Instrument or any part of the Security Instrument without the express written consent of Lender.

**GOVERNING LAW.** This Security Instrument will be governed by the laws of the State of Florida including all proceedings arising from this Security Instrument.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Security Instrument is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest

of the Security Instrument without invalidating the remainder of either the affected provision or this Security Instrument.

**WAIVER OF JURY TRIAL. All parties to this Security Instrument hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Security Instrument or any other instrument, document or agreement executed or delivered in connection with this Security Instrument or the Related Documents.**

**UNIFORM COMMERCIAL CODE (U.C.C.)** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. Mortgagor agrees that this Security Instrument shall suffice as a financing statement and may therefore be filed of record as a financing statement for the purposes of Article 9 of the Uniform Commercial Code. Mortgagor authorizes Lender to file any financing statements required under the Uniform Commercial Code.

**ORAL AGREEMENTS DISCLAIMER.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**By signing this Security Instrument, each Mortgagor acknowledges that all provisions have been read and understood. Signed and sealed by Mortgagor(s):**

**Golden Touch Transportation, LLC**

_____ (Seal)          _____ (Seal)
By: Vivien Barzo          Date 9-8-16          By: Saad Ahmed          Date 9-8-16
Its: **Manager**                                Its: **Manager**

**Witnessed by:**

_____ (Seal)          _____ (Seal)
Name: Darren Oliverio    Date 9-8-16          Name:    MIKE GRIMSLEY    Date 9-8-16

**Exhibit F**

## BUSINESS ACKNOWLEDGMENT

STATE OF      FLORIDA                )
                                     )
COUNTY OF    *OSCEOLA*               )

The foregoing instrument was acknowledged before me this _September 8, 2016_ , by **Vivien Barzo**, **Manager** on behalf of **Golden Touch Transportation, LLC**, a Florida Limited Liability Company, who has produced _FL DL_ as satisfactory evidence of his/her identity.

In witness whereof, I hereunto set my hand and official seal.

My commission expires:

> MICHAEL S. GRIMSLEY
> Notary Public - State of Florida
> Commission # FF 242875
> My Comm. Expires Jun 22, 2019
> Bonded through National Notary Assn.

(Official Seal)

_____

Identification Number _____

## BUSINESS ACKNOWLEDGMENT

STATE OF      FLORIDA                )
                                     )
COUNTY OF    *OSCEOLA*               )

The foregoing instrument was acknowledged before me this _September 8, 2016_ , by **Saad Ahmed**, **Manager** on behalf of **Golden Touch Transportation, LLC**, a Florida Limited Liability Company, who has produced _FL DL_ as satisfactory evidence of his/her identity.

In witness whereof, I hereunto set my hand and official seal.

My commission expires:

> MICHAEL S. GRIMSLEY
> Notary Public - State of Florida
> Commission # FF 242875
> My Comm. Expires Jun 22, 2019
> Bonded through National Notary Assn.

(Official Seal)

_____

Identification Number _____

| THIS INSTRUMENT PREPARED BY: | AFTER RECORDING RETURN TO: |
|---|---|
| **Harbor Community Bank** | **Harbor Community Bank Attn: Loan Operations** |
| **2222 Colonial Rd., Suite 101** | **600 Edwards Rd** |
| **Fort Pierce, FL 34950** | **Fort Pierce, FL 34950** |

© 2004-2015 Compliance Systems, Inc. 3914-0590 - 2015.12.2.1036
Commercial Real Estate Security Instrument - DL4007

Page 7 of 7                                www.compliancesystems.com

_VB_                        Initials        _SA_

**Exhibit F**

## EXHIBIT "A"

Parcel A:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road), thence South 30°54'28" East 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35'20" West 38.30 feet to the Westerly right-of-way line of State Road No. 15A and the Point of Beginning; thence run South 30°54'28" East 130.37 feet along said Westerly right-of-way line, thence run South 89°33'44" West 807.29 feet, thence run North 00°24'40" West 112.71 feet, thence run North 89°35'20" East 741.13 feet to the Point of Beginning.

Parcel B:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road); thence South 30°54'28" East, 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35' 20 West, 38.30 feet to the Westerly right-of-way line of State Road No. 15 A; thence run South 30°54'28" East, 130.37 feet along the Westerly right-of-way line of State Road No. 15A to the Point of Beginning; thence continue South 30°54'28" East 34.81 feet along said Westerly right-of-way line; thence run South 89°33'44" West, 1448.21 feet to the West line of said Northwest 1/4 of Section 25; thence run North 00°47'40" West, 143.00 feet along said West line of the Northwest 1/4 of Section 25; thence run North 89°35'20" East, 624.21 feet; thence run South 00°24'40" East, 112.71 feet; thence run North 89°33'44" East, 807.29 feet to the Point of Beginning.

0054.0011; [1]

**Exhibit F**

```
DOC# 20160478251
09/12/2016 10:36:18 AM  Page 1 of 6
Rec Fee: $52.50
Deed Doc Tax: $0.00
DOR Admin Fee: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
MB - Ret To: GRIMSLEY LAW FIRM P L
```

(Space Above This Line For Recording Data)

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made on **September 8, 2016**, between **Golden Touch Transportation, LLC**, a Florida Limited Liability Company, whose address is **7330 Narcoossee Rd., Orlando**, Florida 32832 ("Assignor") and **Harbor Community Bank** whose address is **100 Park Place Blvd Suite 101, Kissimmee**, Florida 34741 ("Assignee"), which is organized and existing under the laws of the State of Florida. Assignor, in consideration of loans extended by Assignee up to a maximum principal amount of **Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00)** and for other valuable consideration, the receipt of which is acknowledged, hereby grants, transfers, assigns and sets over to Assignee all right, title and interest in and to all rents, issues, profits and privileges (now due or which may hereafter become due) of the following described real property:

    Address: **7340 Narccoossee Road, Orlando**, Florida 32822
    Legal Description: **See attached "Exhibit A"**
    Parcel ID/Sidwell Number: **25-23-30-0000-00-055**

("Property") which secures the following:

- Loan with a principal amount of **$215,000.00**

Assignor further grants all leases now or hereafter existing on all or any part of the Property, whether written or oral, or any letting or any agreement for the use of occupancy of any part of the Property which may have been or which may hereafter be made or agreed to between Assignor and any other present, prior, or subsequent owner of the Property, or any interest therein, or which may be made or agreed to by Assignee, its successors or assigns, under the powers herein granted, and any tenant or occupant of all or any part of the Property (collectively, the "Leases" and each, a "Lease"), including without limitation any leases existing as of the date of this Assignment ("Existing Leases") and described further as:

    **INCLUDING BUT NOT LIMITED TO ANY AND ALL LEASE AGREEMENTS AND ALL RENEWALS, MODIFICATIONS, REPLACEMENTS AND EXTENSIONS THEREOF WHETHER NOW EXISTING OR HEREAFTER OWNED, EXISTING, ACQUIRED, OR ARISING.**

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Assignment whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The

## Exhibit G

Related Documents are hereby made a part of this Assignment by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Assignment secures the principal amount shown above as may be evidenced by a promissory note or notes of even or subsequent date hereto, including future advances made within 20 years from the date hereof up to a "Maximum Principal Indebtedness" of **Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00)** and every other indebtedness of any and every kind now or hereafter owing from **Golden Touch Transportation, LLC** to **Harbor Community Bank**, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Assignment and all Related Documents (hereinafter all referred to as the "Indebtedness"). Unless expressly stated herein to the contrary, nothing contained in this Assignment obligates Assignee to make any future advances under the note(s) of even date herewith or to extend further credit (under separate notes or in any other manner).

**AMENDMENT OR MODIFICATION OF LEASES.** With respect to any Existing Leases or any Leases executed upon the Property after the creation of this Assignment and so long as the Indebtedness remains unpaid, Assignor shall not, without the written consent of Assignee: (a) cancel any Leases; (b) accept the surrender of any Leases; (c) modify or alter any Leases in any way, either orally or in writing; (d) reduce the rental set forth in any Leases; (e) consent to the assignment of any lessee's interest under any Leases, or to any subletting thereunder; or (f) make any other assignment, pledge, encumbrance, or any other disposition of any Leases, or of the rents, issues and profits derived from the use of the Property. Any of the above acts, if done without the written consent of Assignee, shall be null and void, and shall constitute a default under the Assignment and the Related Documents.

**REPRESENTATIONS OF ASSIGNOR.** Assignor hereby represents: (a) except for the Existing Leases, there are no leases, subleases or agreements to lease or sublease all of or any part of the Property; (b) the Leases and Existing Leases are valid and enforceable and no default exists under the Leases or Existing Leases; (c) Assignor is entitled to receive all the rents, issues and profits and to enjoy all the rents and benefits mentioned herein and assigned hereby; (d) said rents, issues and profits have not been sold, assigned, transferred or set over by any instrument now in force and shall not at any time during the life of this Assignment be sold, assigned, transferred or set over by Assignor, or any other person taking under or through Assignor except as pursuant to this Assignment; and (e) Assignor has the sole right to sell, assign, transfer, and set over the same and to grant and confer upon Assignee the rights, interests, powers, and authorities herein granted and conferred.

**COLLECTION OF RENTS.** Provided no Event of Default exists under the Indebtedness or any of the Related Documents, Assignee agrees not to demand from any lessor or lessee under the Leases or Existing Leases or from any other persons liable therefor, any of the rents, issues or profits hereby assigned, but shall permit Assignor to collect all such rents, issues and profits from the Property and the Leases and Existing Leases, so long as not collected more than one (1) month in advance of their due date.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Assignment (each an "Event of Default"):

(a)   Failure to make required payments when due under Indebtedness;

(b)   Failure to perform or keep any of the covenants of this Assignment or a default under any of the Related Documents;

(c)   The making of any oral or written statement or assertion to Assignee that is false or misleading in any material respect by Assignor or any person obligated on the Indebtedness;

(d)   The death, dissolution, insolvency, bankruptcy or receivership proceeding of Assignor or of any person or entity obligated on the Indebtedness;

(e)   Any assignment by Assignor for the benefit of Assignor's creditors;

(f)   A material adverse change occurs in the financial condition, ownership or management of Assignor or any person obligated on the Indebtedness; or

**Exhibit G**

(g)    Assignee deems itself insecure for any reason whatsoever.

**REMEDIES.** Upon the occurrence of an Event of Default under this Assignment, the Indebtedness or the Related Documents, Assignee may declare all sums secured hereby immediately due and payable and may, at Assignee's option, without notice, either in Assignee's person or by agent and with or without bringing any action or proceeding, or by any receiver appointed by the court, enter upon, take possession of, and manage and operate the Property, and each and every part thereof, and in connection therewith, Assignee may make, enforce, and modify any of the Leases; fix or modify rents; repair, maintain and improve the Property; employ contractors, subcontractors, and workmen in and about the Property; obtain and evict tenants; in its own name, sue for and otherwise collect or reserve any and all rents, issues and profits, including those past due and unpaid; employ leasing agents, managing agents, attorneys and accountants in connection with the enforcement of Assignee's rights hereunder and pay the reasonable fees and expenses thereof; and otherwise do and perform any and all acts which Assignee may deem necessary and appropriate in and about the Property for the protection thereof and of Assignee's rights hereunder and under the Related Documents, and any and all amounts expended by Assignee in connection with the foregoing shall constitute additional Indebtedness secured hereby to the extent permitted by law. Assignee shall apply any moneys collected, as aforesaid, less costs and expenses incurred, upon any Indebtedness secured hereby in such order and manner as Assignee may determine and to the extent permitted by law.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Assignee to any party is considered effective when: (i) it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means addressed to the party given at the beginning of this Assignment unless an alternative address has been provided to Assignee in writing. To the extent permitted by law, Assignor waives notice of Assignee's acceptance of this Assignment, defenses based on suretyship, any defense arising from any election by Assignee under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Assignee is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, ASSIGNOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO THE ASSIGNEE EXERCISING ITS RIGHTS UNDER THIS ASSIGNMENT.**

**PAYMENT OF RENTS TO ASSIGNEE.** All tenants or occupants of any part of the Property (including without limitation, all persons claiming any interest as lessor or lessee under any Leases) are hereby authorized to recognize the claims and demands of Assignee without investigation as to the reason for any action taken by Assignee or the validity of the amount of indebtedness owing to or the existence of any default hereunder or under the Related Documents, or the application of payments made by Assignee, of any amounts to be paid to Assignee. Assignee's sole signature shall be sufficient for the exercise of any right under this Assignment and Assignee's sole receipt given for any sums received shall be a full discharge and release therefor to any such tenant or occupant of the Property. Checks for all or any part of the rental collected under this Assignment shall be made to the exclusive order of Assignee.

**ASSIGNABILITY.** Assignee may assign or otherwise transfer this Assignment or any of Assignee's rights under this Assignment without notice to Assignor. Assignor may not assign this Assignment or any part of the Assignment without the express written consent of Assignee.

**ASSIGNEE'S RIGHTS AND REMEDIES.** The rights and remedies of the Assignee under this Assignment are cumulative, and are not in lieu of, but are in addition to all other rights and remedies which Assignee has under this Assignment and the Related Documents.

**Exhibit G**

**SUCCESSORS AND ASSIGNS.** All covenants and agreements contained in this Assignment shall bind, and the rights hereunder shall inure to the respective successors and assigns of the Assignor and the Assignee.

**ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY.** This Assignment shall constitute the entire agreement between Assignee and Assignor. Any modification of this Assignment shall be binding only if placed in writing and signed by the Assignee and Assignor. The invalidity of any provision of this Assignment shall not affect the validity of any other provision.

**PARAGRAPH HEADINGS; SINGULAR AND PLURAL TERMS.** The titles to the paragraphs of this Assignment are solely for the convenience of the parties and shall not be used to interpret this Assignment. Whenever used, the singular shall include the plural, the plural shall include the singular, and the use of any gender shall be applicable to all genders.

**ATTORNEYS' FEES AND OTHER COSTS.** Assignor agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Assignment, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**GOVERNING LAW.** This Assignment will be governed by the laws of the State of Florida including all proceedings arising from this Assignment.

**WAIVER OF JURY TRIAL. All parties to this Assignment hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Assignment or any other instrument, document or agreement executed or delivered in connection with this Assignment or the Related Documents.**

**ORAL AGREEMENTS DISCLAIMER.** This Assignment represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**By signing this Assignment, Assignor acknowledges reading, understanding, and agreeing to all its provisions.**

Golden Touch Transportation, LLC

_____(Seal)

By: Vivien Barzo          Date 4-8-16
Its: Manager
Witnessed by:

_____(Seal)

Name: Darren Oliverio     Date 4-8-16

_____(Seal)

By: Saad Ahmed           Date 4-8-16
Its: Manager

_____(Seal)

Name:     MIKE GRIMSLEY   Date 4-8-16

Exhibit G

## BUSINESS ACKNOWLEDGMENT

STATE OF     FLORIDA     )
                               )
COUNTY OF   _OSCEOLA_   )

The foregoing instrument was acknowledged before me this _September 8, 2016_ , by **Vivien Barzo**, **Manager** on behalf of **Golden Touch Transportation, LLC,** a Florida Limited Liability Company, who has produced _FL DL_ as satisfactory evidence of his/her identity.

In witness whereof, I hereunto set my hand and official seal.

My commission expires:

MICHAEL S. GRIMSLEY
Notary Public - State of Florida
Commission # FF 242875
My Comm. Expires Jun 22, 2019
Bonded through National Notary Assn.

_____

Identification Number _____

(Official Seal)

## BUSINESS ACKNOWLEDGMENT

STATE OF     FLORIDA     )
                               )
COUNTY OF   _OSCEOLA_   )

The foregoing instrument was acknowledged before me this _September 8, 2016_ , by **Saad Ahmed**, **Manager** on behalf of **Golden Touch Transportation, LLC,** a Florida Limited Liability Company, who has produced _FL DL_ as satisfactory evidence of his/her identity.

In witness whereof, I hereunto set my hand and official seal.

My commission expires:

MICHAEL S. GRIMSLEY
Notary Public - State of Florida
Commission # FF 242875
My Comm. Expires Jun 22, 2019
Bonded through National Notary Assn.

_____

Identification Number _____

(Official Seal)

| THIS INSTRUMENT PREPARED BY: | AFTER RECORDING RETURN TO: |
|---|---|
| **Harbor Community Bank** | **Harbor Community Bank Attn: Loan Operations** |
| **2222 Colonial Rd., Suite 101** | **600 Edwards Rd** |
| **Fort Pierce, FL 34950** | **Fort Pierce, FL 34950** |

**Exhibit G**

## EXHIBIT "A"

Parcel A:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road), thence South 30°54'28" East 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35'20" West 38.30 feet to the Westerly right-of-way line of State Road No. 15A and the Point of Beginning; thence run South 30°54'28" East 130.37 feet along said Westerly right-of-way line, thence run South 89°33'44" West 807.29 feet, thence run North 00°24'40" West 112.71 feet, thence run North 89°35'20" East 741.13 feet to the Point of Beginning.

Parcel B:

A parcel of land located in the Northwest 1/4 of Section 25, Township 23 South, Range 30 East, Orange County, Florida, described as follows:

Commencing at the intersection of the North line of said Northwest 1/4 of Section 25 and the centerline of State Road No. 15A (Narcoossee Road); thence South 30°54'28" East, 2158.46 feet along the centerline of State Road No. 15A; thence South 89°35' 20 West, 38.30 feet to the Westerly right-of-way line of State Road No. 15 A; thence run South 30°54'28" East, 130.37 feet along the Westerly right-of-way line of State Road No. 15A to the Point of Beginning; thence continue South 30°54'28" East 34.81 feet along said Westerly right-of-way line; thence run South 89°33'44" West, 1448.21 feet to the West line of said Northwest 1/4 of Section 25; thence run North 00°47'40" West, 143.00 feet along said West line of the Northwest 1/4 of Section 25; thence run North 89°35'20" East, 624.21 feet; thence run South 00'24'40" East, 112.71 feet; thence run North 89°33'44" East, 807.29 feet to the Point of Beginning.

VB

0054.0011; [1]

**Exhibit G**