# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
### www.flmb.uscourts.gov

In re:                                                    CASE NO.: 6:18-bk-02348-KSJ

**GOLDEN TOUCH**                                  CHAPTER 11
**TRANSPORTATION, LLC,**

        Debtor.

_____/

## DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125 FOR GOLDEN TOUCH TRANSPORTATION, LLC

COUNSEL FOR DEBTOR

JUSTIN M. LUNA, ESQ.
DANIEL A. VELASQUEZ, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVE., SUITE 1400
ORLANDO, FLORIDA 32801

August 7, 2018

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                        CASE NO.: 6:18-bk-02348-KSJ

**GOLDEN TOUCH**                              **CHAPTER 11**
**TRANSPORTATION, LLC,**

            Debtor.
_____/

### DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125 FOR GOLDEN TOUCH TRANSPORTATION, LLC

**I.      INTRODUCTION AND SUMMARY**

This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of § 1125 of Title 11 of the United States Code (the "Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case (the "Bankruptcy Case") to make an informed judgment about the Plan of Reorganization (the "Plan") submitted by **GOLDEN TOUCH TRANSPORTATION, LLC** (the "Debtor" or "Golden Touch"). Debtor is soliciting votes to accept the Plan, the overall purpose of which is to provide for the satisfaction of the Debtor's liabilities in a manner designed to maximize recoveries to all stakeholders.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED**

JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.

NO REPRESENTATION CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE THAT ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AND DUE TO THE COMPLEXITY OF THE DEBTOR'S FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

As prescribed by the Code and the Federal Rules of Bankruptcy Procedure, the Plan places into "Classes" all Claims asserted against the Debtor as set forth in Section IV below. The Plan designates nine (9) separate classes of Claims and Interests. As explained in detail below, the Plan generally contemplates paying Holders of Allowed Secured Claims in full over time with interest and paying Holders of Allowed Unsecured Claims through annual pro rata distributions

based on the Debtor's net cash flow each quarter. The Plan also provides that the Debtor's membership interests will be retained by the existing Interest Holders. Debtor believes the Plan provides the best means currently available for its emergence from Chapter 11 and the best recoveries possible for holders of claims and interests, and, thus, strongly recommends that you vote to accept the Plan.

A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with an order approving this Disclosure Statement. You should use the Ballot that will be sent to you to cast your vote for or against the Plan. You may *not* cast Ballots or vote orally or by facsimile. Whether or not you vote, you will be bound by the terms and treatment set forth in the Plan if the Bankruptcy Court confirms the Plan. The Bankruptcy Court may disallow any vote accepting or rejecting the Plan if the vote is not cast in good faith.

**PLEASE NOTE:**

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM IS IMPORTANT.  TO BE COUNTED, YOUR BALLOT MUST BE <u>RECEIVED</u> AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration.  As described in greater detail in Section V of this Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan.  The Bankruptcy Court shall schedule a hearing to consider whether the Debtor has complied with those requirements (the "Confirmation Hearing").

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in Section V of this Disclosure Statement, the Debtor

has expressly reserved the right to seek cramdown in the event all Impaired Classes do not vote in favor of the Plan.

## II.    BACKGROUND AND EVENTS LEADING TO FILING BANKRUPTCY

Debtor owns the real property located at 7350 Narcoossee Road, Orlando, Florida 32822 (the "Real Property"). The Debtor leases the Real Property to a number of tenants that, in turn, offer the use of the property for Orlando Airport parking. The Debtor also leases the property to a food truck and other companies for their own short-term and long-term parking needs. Additionally, the Debtor owns transit vehicles that are used to transport individuals from the Real Property to the Airport and Cape Canaveral for cruise departures.

The Debtor was formed in 2016 for the purpose of using the Real Property to generate income as set forth above. To purchase the Real Property, the Debtor took out loans with Harbor Bank n/k/a Centerstate Bank, N.A. ("Centerstate"). The Debtor also took out unsecured loans from private lenders to assist with the purchase of the Real Property and for startup capital. To ensure the Real Property was code compliant for purposes of operating its business, Orange County required that the Debtor prepare the Real Property by improving it with required excavation, paving and curbing work. Sunray Paving & Construction Company ("Sunray") was initially used to develop the Real Property. This ended up being a significant mistake. Sunray dug 4 feet below the property surface, when only 1.5 inches was requested. Sunray's errors led to delays, construction issues, further increases in construction costs and depleted the Debtor's available cash to remedy Sunray's error. The Debtor anticipates that the total damages from Sunray's error were approximately $100,000.00.

Thus, with little cash left, the Debtor fell behind in its debt service payments to Centerstate. As a result, Centerstate filed a foreclosure action against the Real Property and additional collateral. Additionally, the Debtor fell behind with its payments to PNC Bank, who has a lien on some of the

Debtor's vehicles. The Debtor could not operate without its vehicles or Real Property and as a result, the Debtor filed the instant Chapter 11 Bankruptcy Case to preserve the going concern value of its operations for the benefit of its estate and creditors.

## III.    SIGNIFICANT EVENTS SUBSEQUENT TO DEBTOR'S CHAPTER 11 FILING

On April 24, 2018 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases. As authorized by order of this Court, Debtor continues to operate its business as debtor-in-possession under §§ 1107(a) and 1108 of the Code and continues to operate the Real Property on a cash flow basis as demonstrated in the monthly operating reports filed by Debtor since the Petition Date. *See* Doc. Nos: 24, 33 and 36.

On May 2, 2018, Debtor filed its Application to Employ Justin M. Luna and the law firm of Latham, Shuker, Eden & Beaudine, LLP ("Latham Shuker") (Doc. No. 14), and on June 21, 2018, the Court entered an order approving the application (Doc. No. 31), which authorized Debtor to retain Latham Shuker as its bankruptcy counsel.

On June 4, 2018, the Office of the United States Trustee held and concluded the initial meeting of creditors. No creditors' committee was appointed in the Debtor's bankruptcy case.

On June 8, 2018, Centerstate filed a *Motion to Prohibit Use of Cash Collateral and for an Order Directing Turnover of Rents* (Doc. No. 25) (the "Turnover Motion") and a *Motion for Relief from the Automatic Stay* (Doc. No. 26) (the "Stay Relief Motion"), which argues that the automatic stay pursuant to 11 U.S.C. § 362(a) should be lifted thereby allowing Centerstate to pursue its rights and remedies with respect to a vehicle owned by the Debtor and the Real Property. As of the filing of this Disclosure Statement, the Turnover Motion and Stay Relief Motion are set for a preliminary hearing on August 8, 2018 at 1:00 p.m.

In addition, on July 18, 2018, Centerstate filed *its Motion to Determine Debtor is a Single Asset Real Estate Debtor* (the "SARE Motion") (Doc. No. 34) seeking a determination that Debtor is subject to the single asset real estate provisions of 11 U.S.C. § 362(d)(3). As of the filing of this Disclosure Statement, the SARE Motion is set for a preliminary hearing on August 8, 2018 at 1:00 p.m.

From an operations perspective, with the ordeal with Orange County in its rear-view mirror, and stability in operations at the Real Property, the Debtor has established that it has operating capital and revenue to support reorganization for the benefit of all stakeholders.

## IV.    THE PLAN

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTOR'S PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A.    Overview.

All Claims held against the Debtor shall be classified and treated pursuant to the terms of the Plan. The Plan contains nine (9) separate Classes of Claims and Interests. There are seven (7) Classes of Secured Claims, one (1) Class of Unsecured Claims, and one (1) Class of Equity Interests. The Plan contemplates paying: (i) Allowed Secured Claims in full over time with interest and (ii) Allowed General Unsecured Claims through quarterly payments based on net cash flow. In addition, the Plan provides that Holders of Allowed Equity Interests in the Debtor will retain their interests to the same extent existing as of the Petition Date. The Plan further provides the respective Holders of Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax

Claims, if any, will be paid in full on the Effective Date or in accordance with the treatment specified herein.

    B.    <u>Impairment of Claims</u>.

        To the extent the legal, contractual or equitable rights with respect to any Claim or Interest asserted against the Debtor is altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. The characterization of each Claim or Interest as "Impaired" or "Unimpaired" is set forth below in the treatment specified in Classes 1 through 7.

    C.    <u>Determination of Allowed Amounts</u>.

        Treatment prescribed for Claims in the following sections shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement, Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

    D.    <u>Treatment of Unclassified Claims</u>.

        1.    <u>Priority Claims</u>.

            a.    <u>Administrative Expense Claims</u>.

        Holders of all Allowed Administrative Expense Claims of the Debtor shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the

Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. However, nothing in this provision of the Plan shall preclude the Reorganized Debtor from paying any holder of a Non-Ordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim Holder consents to different payment terms. The Allowed Administrative Claims shall be paid from cash on hand or through pre-petition retainer. As of August 1, 2018, the Administrative Claims were approximately $25,000.00.

   b. <u>Priority Tax Claims</u>.

     Except to the extent that the Holder, the Debtor or Reorganized Debtor have agreed or may agree to different treatment, each Holder of an Allowed Priority Tax Claim shall be paid in full from the Debtor's cash on hand after payment of all Allowed Administrative Claims. The filed amount of Priority Tax Claims is currently $0.00. The Debtor estimates the Allowed Amount of such Priority Tax Claims will not exceed $0.00, however; should any Priority Tax Claims become Allowed in an amount exceeding $0.00, such claims shall be treated in accordance with the provisions of this paragraph.

  E. <u>Classification and Treatment of Claims</u>.

   1. <u>Secured Claims</u>.

    a. <u>Class 1 – Allowed Secured Tax Claim of the Orange County Tax Collector (2017 Real Property Taxes)</u>.

     Class 1 consists of the Allowed Secured Claim of Orange County Tax Collector with respect to the unpaid 2017 real property taxes for the Real Property. The Class 1 Claims is secured by a statutory property tax lien on the Real Property. In full satisfaction of its Class 1 Allowed Secured Tax Claim, the Orange County Tax Collector shall retain its lien on the Real Property to the same extent, validity and priority existing as of the Petition Date, and beginning on

the Effective Date shall be paid monthly payments of principal and interest pursuant to a twenty-five (25) year amortization schedule with interest accruing at a fixed rate of 4.25% per annum, with a maturity date sixty (60) months after the Petition Date. Class 1 is Impaired.

b.   Class 2 – Allowed Secured Claim of Orange County Code Enforcement.

Class 2 consists of the Allowed Secured Claim of Orange County Code Enforcement. The Class 2 Claim is secured by a statutory lien on the Real Property. In full satisfaction of its Allowed Class 2 Claim, Orange County Code Enforcement shall retain its lien on the Real Property to the same extent, validity and priority existing as of the Petition Date, and beginning on the Effective Date shall be paid monthly payments of principal and interest pursuant to a twenty-five (25) year amortization schedule with interest accruing at a fixed rate of 4.25% per annum, with a 5 year term. Class 2 is Impaired.

c.   Class 3 – Allowed Secured Claim of Sunray Paving & Construction Company.

Class 3 consists of the Allowed Secured Claim of Sunray Paving & Construction Company ("Sunray"). The Class 3 Claim is secured by a statutory construction lien on the Real Property. In full satisfaction of its Allowed Class 3 Claim, Sunray shall retain its lien on the Real Property to the same extent, validity and priority existing as of the Petition Date, and beginning on the Effective Date shall be paid monthly payments of principal and interest pursuant to a twenty-five (25) year amortization schedule with interest accruing at a fixed rate of 4.25% per annum, with a 5 year term. Class 3 is Impaired.

d.   Class 4 – Allowed Secured Claim of Centerstate Bank.

Class 4 consists of the Allowed Secured Claim of Centerstate Bank ("Centerstate"). The Class 4 Claim is secured by a first priority mortgage lien and security interest in

the Real Property, and certain personal property of the Debtor. In full satisfaction of its Class 4 Allowed Secured Claim, Centerstate shall retain its lien on the Real Property to the same extent, validity and priority existing as of the Petition Date, and beginning on the Effective Date shall be paid monthly payments of principal and interest, with interest accruing at a fixed rate of 5.15% per annum, amortized over 20 years, with a maturity date thirty (30) months after the Effective Date. Provided Debtor remains in compliance with the obligations set forth in Class 4, Centerstate will forego enforcement of any personal guarantee associated with its mortgage loan to the Debtor. Class 4 is Impaired.

e.       Class 5 – Allowed Secured Claim of Centerstate Bank
(2008 Ford Krystal Bus; VIN: 1FDAF56R68EC79597)

Class 5 consists of the Allowed Secured Claim of Centerstate Bank ("Centerstate"). The Class 5 Claim is secured by a first priority lien on the Debtor's 2008 Ford Krystal Bus (the "2008 Ford"). In full satisfaction of its Class 5 Allowed Secured Claim, Centerstate shall retain its lien on the 2008 Ford to the same extent, validity and priority existing as of the Petition Date, and beginning on the Effective Date shall be paid monthly payments of principal and interest with interest accruing at a fixed rate of 5.50% per annum, amortized over five (5) years with a five-year term. Provided Debtor remains in compliance with the obligations set forth in Class 5, Centerstate will forego enforcement of any personal guarantee associated with its auto loan to the Debtor. Class 5 is Impaired.

f.       Class 6 – Allowed Secured Claim of Ford Motor Credit Company,
LLC. (2017 Ford T350HD Van; VIN: 1FBVU4XG1HKA29872)

Class 6 consists of the Allowed Secured Claim of Ford Motor Credit Company ("Ford") in the amount of $31,000.00. The Class 6 Claim is secured by a first priority lien on the Debtor's 2017 Ford T350HD Van (the "2017 Ford"). In full satisfaction of its Class 6

Allowed Secured Claim, Ford shall retain its lien on the 2017 Ford to the same extent, validity and priority existing as of the Petition Date and beginning on the Effective Date shall be paid monthly payments of principal and interest with interest accruing at a fixed rate of 5.99% per annum, amortized over four (4) years with a four year payoff. Class 6 is Impaired.

  g.  <u>Class 7 – Allowed Secured Claim of PNC Bank</u>.
     (2007 Chevy Bus, VIN: 1GBE5V1227F408127; 2005 GMC Van,
     VIN: 1GDJG31U651195313)

    Class 7 consists of the Allowed Secured Claim of PNC Bank ("PNC"). The Class 7 Claim is secured by a first priority lien on the Debtor's 2007 Chevy Bus (the "2007 Chevy") and 2005 GMC Van (the "2005 GMC"). In full satisfaction of its Class 7 Allowed Secured Claim, PNC shall retain its liens on the 2007 Chevy and 2005 GMC to the same extent, validity and priority existing as of the Petition Date and beginning on the Effective Date shall be paid monthly payments of principal and interest with interest accruing at a fixed rate of 4.25% per annum, amortized over five (5) years with a five year payoff. Class 7 is Impaired.

  2.  <u>Unsecured Claims</u>.

  a.  <u>Class 8 – Allowed General Unsecured Claims</u>.

    Class 8 consists of all Allowed General Unsecured Claims against the Debtor. In full satisfaction of their Allowed Class 8 Claims, holders of such claims shall receive quarterly payments based on the Debtor's operations. The quarterly payments shall be for 5 years after the Effective Date equal to twenty-five percent (25%) of the Debtor's actual net profits for each calendar quarter, which payment shall be distributed pro rata to all Class 8 Claim Holders on the month following the conclusion of each calendar quarter (the "Cash Flow Payments"). Each allowed Class 8 Claimholder may request reasonable financial information from the Debtor to verify the calculation of the Class 8 payment(s). The maximum Distribution under the Cash Flow Note shall

be equal to the total amount of the Class 8 Claims, and no Class 8 Holder shall receive an amount greater than the amount of its Allowed Unsecured Claim. Class 8 is Impaired.

      3.    Equity Interests.

          a.    Class 9 – Equity Ownership Interests in the Debtor.

Class 9 consists of all membership interests currently issued or authorized in the Debtor. Allowed Equity Interests shall retain their interests in the Debtor to the same extent and validity as of the Petition Date. Class 9 is Unimpaired.

    F.    Means of Implementation.

      1.    Business Operations.

The Plan contemplates that the Debtor will continue to manage and operate its business in the normal course, but with restructured debt obligations. Debtor believes the rental income received from Gold Park Orlando, LLC and the lessees identified on Debtor's Schedule "G", will be sufficient to make all Plan Payments and maintain existing operational expenses as established by the Projections.

      2.    Funds Generated During Chapter 11.

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

      3.    Management and Control of the Reorganized Debtor.

The operations of the Reorganized Debtor shall continue to be overseen by the Debtor's current Manager, Mr. Saad Ahmed. The powers of officers and managers of the Reorganized Debtor shall be substantially the same as they were prior to the Petition Date.

4.    <u>Preservation, Prosecution and Defense of Causes of Action</u>.

Except as set forth herein, upon Confirmation, the Debtor and the Reorganized Debtor shall have, retain, reserve and be entitled to assert all claims, and Causes of Action, including all pending adversary proceedings whether or not such causes of action have been commenced as of the Effective Date. The Reorganized Debtor shall prosecute or defend, as appropriate, such actions through to final judgment, and any appeals it deems necessary and appropriate; provided, however, that the Reorganized Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as it deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Reorganized Debtor deems such action to be in the best interest of creditors without Bankruptcy Court or other approval. Any recoveries derived from the Causes of Action shall be distributed by the Reorganized Debtor in accordance with the terms of the Plan.

5.    <u>Disbursing Agent</u>.

The Reorganized Debtor will serve as the Disbursing Agent for all distributions to be made under the Plan. The Reorganized Debtor will oversee and direct: (i) all claim objections; (ii) all disbursements to be made under the Plan; and (iii) all other actions required under the Plan, the Bankruptcy Code, or by order of the Bankruptcy Court.

G.    <u>Other Provisions</u>.

1.    <u>Leases and Executory Contracts</u>.

The Plan provides the Debtor shall have through and including the Effective Date within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not rejected or subject to a filed motion to

14

reject by such date, then such unexpired lease or executory contract shall be deemed assumed. The Debtor's position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtor was a party as of the Petition Date.

2.   Procedures For Resolving Disputed Claims.

a.   Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date. In the event that service by publication is necessary, the procedures for publication available under Florida Law may be utilized.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Reorganized Debtor shall have, retain,

reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

        b.      <u>Estimation of Claims</u>.

        Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

        c.      <u>Cumulative Remedies</u>.

        In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

d.    <u>Payments and Distributions on Disputed Claims.</u>

As and when authorized by a Final Order, Disputed Claims or Interest that become "Allowed" shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim or Interest receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor or Equity Interest Holder who holds both an Allowed Claim and a Disputed Claim or Interest will not receive a distribution until such dispute is resolved by settlement or Final Order.

e.    <u>Allowance of Claims and Interests.</u>

(i)    <u>Disallowance of Claims.</u>

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor. The Debtor reserves and shall have the exclusive right and authority to bring any causes of action under Chapter 5 of the Bankruptcy Code.

(ii)    <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim, lien or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

f.    <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

3.    <u>Effect of Confirmation</u>.

a.    <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for herein will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtor's operating agreement, if so required, such that the provisions of this Plan can be effectuated. The Reorganized Debtor shall be authorized, without further applicable to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

b.    <u>Post-Confirmation Status Report</u>.

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Reorganized Debtor shall file a status report with the Bankruptcy Court attaching a

detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

## V.   **CONFIRMATION**

    A.   Confirmation Hearing.

        Section 1128 of the Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

        Counsel for the Debtor:

        Justin M. Luna, Esquire
        Latham, Shuker, Eden & Beaudine, LLP
        111 N. Magnolia Ave., Suite 1400
        Orlando, Florida 32801
        jluna@lseblaw.com

        United States Trustee:

        George C. Young Federal Building
        400 West Washington Street, Suite 1100
        Orlando, Florida 32801

    B.   Financial Information Relevant to Confirmation.

        1.    The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor, unless the liquidation is proposed in the Plan. A copy of the Debtor's projections (the

"Projections") for the five (5) years following confirmation of the Plan will be filed with the Bankruptcy Court and served on all interested parties three weeks prior to the Plan voting deadline. The Projections show that the Debtor's operational cash flow will be sufficient to service the required Plan Payments. The projections and other financial information will be provided by and prepared by the Debtor's Manager, Mr. Saad Ahmed. The Projections may not be relied upon as a guaranty or other assurance of the actual results that will occur as they are based upon a variety of estimates and assumptions which may not be realized.

2.    Debtor's Chapter 7 liquidation analysis ("Liquidation Analysis") is attached hereto as **Exhibit "A"**. The Liquidation Analysis establishes that Creditors will receive under the Plan an amount not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7.

C.    Confirmation Standards.

For a plan to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept the plan, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in § 1129 of the Code have been met. The Debtor believes that the Plan satisfies all of the requirements for Confirmation.

1.    Best Interests Test.

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed

20

Claim of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if Debtor were, on the Effective Date, liquidated under Chapter 7 of the Code. The Debtor believes that satisfaction of this test is established by the Liquidation Analysis.

To determine what holders of Claims would receive if the Debtor was liquidated, the Bankruptcy Court must determine how the assets and properties of the Debtor would be liquidated and distributed in the context of a Chapter 7 liquidation case. The Debtor's costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by the Debtor during the Bankruptcy Cases, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors would receive meaningful distributions. The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Bankruptcy Cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any Payment.

The Debtor has carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors, including the following:

a.     The possible costs and expenses of the Chapter 7 trustee or trustees;

b.     the possible adverse effect on recoveries by Creditors under Chapter 7 due to reduced sale prices for the Debtor's assets caused by the forced Chapter 7 liquidation;

c.      the loss of the going-concern value of the Debtor's business; and

d.      the possible substantial increase in Claims, which would rank prior to or on a parity with those of Unsecured Creditors.

2.    <u>Acceptance by Impaired Classes</u>.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under the Plan is deemed to have accepted the Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

3.   Confirmation Without Acceptance by all Impaired Classes: "Cramdown."

The Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims. Section 1129(b)(1) of the Code states:

Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**THE DEBTOR BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

D.   Consummation.

The Plan will be consummated and Distributions made if the Plan is Confirmed pursuant to a Final Order of the Bankruptcy Court, the Effective Date occurs, and the Properties are sold as contemplated herein. It will not be necessary for the Reorganized Debtor to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Code.

E.   Exculpation from Liability.

The Debtor, the Reorganized Debtor, and its Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person for any act taken or omitted to be

taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided, however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and its respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtor's members or managers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

F.    <u>Police Power</u>.

No provision of Article V shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

G.    <u>Revocation and Withdrawal of this Plan</u>.

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

H.    <u>Modification of Plan</u>.

The Debtor may seek to amend or modify the Plan in accordance with § 1127(b) of the Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take

any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

## VI.    ALTERNATIVE TO THE PLAN

If the Plan is not confirmed and consummated, the Debtor believes the most likely alternative is a liquidation of the Debtor's assets under Chapter 7 of the Code at prices far below their current market value. The Debtor therefore believes that liquidation of all real and personal property in a Chapter 7 case would dramatically reduce the total amount available to Creditors as compared to liquidation under the Plan. In light of the foregoing, Debtor recommends that holders of Claims vote to accept the Plan.

**RESPECTFULLY SUBMITTED** this 7th day of August 2018.

/s/ Justin M. Luna
**Justin M. Luna, Esq.**
Florida Bar No. 0037131
jluna@lseblaw.com
**Daniel A. Velasquez, Esq.**
Florida Bar No. 0098158
dvelasquez@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile:  407-481-5801
*Attorneys for Debtor*

EXHIBIT "A"

## GOLDEN TOUCH TRANSPORTATION, LLC
### Case No.  8:18-bk-02348-KSJ

## LIQUIDATION ANALYSIS

| Asset | Estimated Liquidation Value as of August 2018[1] |
|---|---|
| Cash[2] | $ 21,259.82 |
| Personal Property | $ 126,700.00 |
| Real Property | $ 1,362,500.00 |
| TOTAL LIQUIDATION | $ 1,510,459.82 |
| | |
| Secured Debt[3] | $ 1,558,292.80 |
| Administrative:  Chapter 11 | $    30,000.00 |
| Priority Tax Claim(s) | $    0.00 |
| TOTAL DEBT | $ 1,588,292.80 |
| AVAILABLE FOR GENERAL UNSECURED CREDITORS | $ 0.00 |

---

[1] Net of Liquidation Costs
[2] Per June DIP Report.
[3] Based upon the Scheduled Amounts and Claims Register