**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                        CASE NO.: 6:18-bk-02348-KSJ

**GOLDEN TOUCH**                                    CHAPTER 11
**TRANSPORTATION, LLC,**

            **Debtor.**
_____/

## PLAN OF REORGANIZATION FOR GOLDEN TOUCH TRANSPORTATION, LLC

COUNSEL FOR DEBTOR

JUSTIN M. LUNA, ESQ.
DANIEL A. VELASQUEZ, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVE., SUITE 1400
ORLANDO, FLORIDA 32801

August 7, 2018

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:18-bk-02348-KSJ** |
| **GOLDEN TOUCH** | **CHAPTER 11** |
| **TRANSPORTATION, LLC,** | |
| Debtor. | |

_____/

## PLAN OF REORGANIZATION FOR GOLDEN TOUCH TRANSPORTATION, LLC

**GOLDEN TOUCH TRANSPORTATION, LLC** (the "Debtor"), by and through its undersigned counsel, hereby proposes the following Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I – DEFINITIONS

For the purpose of the Plan, the following terms will have the meanings set forth below:

1.     **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate, including management fees, or commissions for service, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.     **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

5.      **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or

a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed

by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no

objection to the allowance thereof has been interposed within any applicable period of limitation

fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

6.      **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the

Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

7.      **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506

of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor

the amount of the Claim is challenged as provided herein.

8.      **Allowed Unsecured Claim** means an Unsecured Claim to the extent such

Unsecured Claim is or becomes an Allowed Claim.

9.      **Assets** means each and every item of Property of the Estate and every interest of the

Debtor as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or

unliquidated, whether or not controlled by the Debtor, and includes without limitation:  (a) all real

and personal property and Cash; (b) all rights, privileges, Claims, demands, or Causes of Action,

whether arising by statute or common law, and whether arising under the laws of the United States,

other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, contract

rights, or other rights, including without limitation rights to payment, contribution or distribution,

whether due prior or subsequent to the Petition Date; and (d) all Executory Contracts, and other

contracts, agreements, licenses, and leases.

10.     **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be

sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to

accept or reject the Plan.

11.      **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

12.      **Bankruptcy Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, case number 6:18-bk-02348-KSJ.

13.      **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

14.      **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

15.      **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

16.      **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

17.      **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

18.      **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

20.      **Cash Flow Payments** refers to the quarterly payments remitted by the Debtor in accordance with the Cash Flow Note and the terms set forth in Class 8.

21.    **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to: (i) the claims for listed in Debtor's Schedules; and (ii) the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court.  A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

22.    **Claim** means "claim" as defined in Bankruptcy Code § 101(5).

23.    **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

24.     **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

25.     **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

26.     **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

27.     **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

28.     **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

29.     **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

30.     **Creditor** means "Creditor" as defined in Bankruptcy Code § 101(1).

31.     **Debtor** means Golden Touch Transportation, LLC.

32.     **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

33.     **Disclosure Statement** means the Disclosure Statement describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125, together with any amendments or modifications thereto.

34.     **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

35.     **Disputed Interest** means every Interest that is not an Allowed Interest and that has not yet been Disallowed.

36.     **Distribution** means a distribution to the Holders of Allowed Claims.

37.     **Effective Date** means the date upon which this Plan becomes effective upon satisfaction of the conditions set forth in Article VII, Section (C) herein.

38.     **Estate** means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

39.     **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

40.     **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

41.     **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

42.     **Holder** means the holder of a Claim or Interest, as applicable.

43.     **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124 .

44.     **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

45.     **Interest** means all membership interests currently issued or authorized in the Debtor as determined by Final Order of the Bankruptcy Court or by separate agreement.

46.    **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtor, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtor or any other party with standing to bring such a challenge.

47.    **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; provided, however, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

48.    **Person** means "person" as defined in Bankruptcy Code § 101(41).

49.    **Personal Property** means all tangible personal property of the Debtor.

50.    **Petition Date** means April 24, 2018, the date on which Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

51.    **Plan** means this Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

52.    **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

53.    **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

54.    **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

55.    **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

56. **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

57. **Pro Rata** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

58. **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

59. **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

60. **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

61. **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

62. **Property Tax Administrative Claim** means every Claim of any state or local governmental unit that is an Administrative Claim for unpaid property taxes, unpaid personal

property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date.  Allowed Property Tax Administrative Claims will be classified and paid under the Plan as the Plan provides for Administrative Claims.

63.    **Real Property** means the parcel of real property located at: 7330 Narcoossee Road, Orlando, Florida 32822.

64.    **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

65.    **Secured Claim** means a Claim secured by a Lien against the Debtor's Assets, or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

66.    **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

67.    **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

68.    **Statutory Rate** shall mean the interest rate allowed to be charged pursuant to applicable state law on unpaid *ad valorem* taxes.

69.    **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Bankruptcy Code § 1124.

70.    **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

71.     **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq.* and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims treated under Articles III-IV of the Plan are divided into the following classes, which shall be mutually exclusive:

A.     <u>Secured Claims</u>.

1.     <u>Class 1 – Allowed Secured Claim of the Orange County Tax Collector</u>.

Class 1 consists of the Allowed Secured Claim of Orange County Tax Collector with respect to the unpaid 2017 real property taxes for the Real Property. Class 1 is Impaired.

2.     <u>Class 2 – Allowed Secured Claim of Orange County Code Enforcement</u>.

Class 2 consists of the Allowed Secured Claim of Orange County Code Enforcement. The Class 2 Claim is secured by a statutory lien on the Real Property. Class 2 is Impaired.

3.     <u>Class 3 – Allowed Secured Claim of Sunray Paving & Construction Company</u>.

Class 3 consists of the Allowed Secured Claim of Sunray Paving & Construction Company. The Class 3 Claim is secured by a statutory construction lien on the Real Property. Class 3 is Impaired.

4.     <u>Class 4 – Allowed Secured Claim of Centerstate Bank</u>.

Class 4 consists of the Allowed Secured Claim of Centerstate Bank. The Class 4 Claim is secured by a first priority mortgage lien and security interest in the Real Property, and certain personal property of the Debtor. Class 4 is Impaired.

5.    Class 5 – Allowed Secured Claim of Centerstate Bank.
(2008 Ford Krystal Bus; VIN: 1FDAF56R68EC79597)

Class 5 consists of the Allowed Secured Claim of Centerstate Bank. The Class

5 Claim is secured by a first priority lien on the Debtor's 2008 Ford Krystal Bus (the "2008 Ford").

Class 5 is Impaired.

6.    Class 6 – Allowed Secured Claim of Ford Motor Credit Company, LLC.
(2017 Ford T350HD Van; VIN: 1FBVU4XG1HKA29872)

Class 6 consists of the Allowed Secured Claim of Ford Motor Credit

Company ("Ford") in the amount of $31,000.00. The Class 6 Claim is secured by a first priority lien

on the Debtor's 2017 Ford T350HD Van (the "2017 Ford"). Class 6 is Impaired.

7.    Class 7 – Allowed Secured Claim of PNC Bank.
(2007 Chevy Bus, VIN: 1GBE5V1227F408127; 2005 GMC Van, VIN:
1GDJG31U651195313).

Class 7 consists of the Allowed Secured Claim of PNC Bank ("PNC"). The

Class 7 Claim is secured by a first priority lien on the Debtor's 2007 Chevy Bus (the "2007 Chevy")

and 2005 GMC Van (the "2005 GMC"). Class 7 is Impaired.

B.    Unsecured Claims.

1.    Class 8 – Allowed General Unsecured Claims.

Class 8 consists of all Allowed General Unsecured Claims. Class 8 is

Impaired.

C.    Equity Interests.

1.    Class 9 – Equity Interests of the Debtor.

Class 9 consists of all membership interests currently issued or authorized in

the Debtor. Class 9 is Unimpaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

A.      Administrative Expense Claims.

Holders of all Allowed Administrative Expense Claims of the Debtor shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. However, nothing in this provision of the Plan shall preclude the Reorganized Debtor from paying any holder of a Non-Ordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim Holder consents to different payment terms. The Allowed Administrative Claims shall be paid from cash on hand or through pre-petition retainers. As of August 1, 2018, the Administrative Claims were approximately $25,000.00.

B.      Priority Tax Claims.

Except to the extent that the Holder, the Debtor or Reorganized Debtor have agreed or may agree to different treatment, each Holder of an Allowed Priority Tax Claim shall be paid in full from the Debtor's cash on hand after payment of all Allowed Administrative Claims. The filed amount of Priority Tax Claims is currently $0.00. The Debtor estimates the Allowed Amount of such Priority Tax Claims will not exceed $0.00, however; should any Priority Tax Claims become Allowed in an amount exceeding $0.00, such claims shall be treated in accordance with the provisions of this paragraph.

## ARTICLE IV – TREATMENT OF IMPAIRED CLASSES.

A.      Determination of Allowed Amounts.

Treatment prescribed for Claims in the following sections of this Article IV shall in all events refer exclusively to the Allowed Amount of each respective Claim or Interest.  In the event

the Allowed Amount of any Claim or Interest is not determined by agreement or otherwise prior to

the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the

determination of such Claim or Interest by agreement or Final Order or as otherwise provided under

the Plan.  Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any

Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by

applicable bankruptcy and non-bankruptcy law.

       Entry of the Confirmation Order shall be deemed to be recognition that the

Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to

Article VII, Section H, of this Plan, and other applicable law.

       There are eight (8) Classes of Claims or Interests that are Impaired.  Treatment for

these classes is as follows:

    B.    <u>Secured Claims</u>.

        1.    <u>Class 1 – Allowed Secured Tax Claim of the Orange County Tax Collector (2017 Real Property Taxes)</u>.

        Class 1 consists of the Allowed Secured Claim of Orange County Tax

Collector with respect to the unpaid 2017 real property taxes for the Real Property. The Class 1

Claims is secured by a statutory property tax lien on the Real Property. In full satisfaction of its Class

1 Allowed Secured Tax Claim, the Orange County Tax Collector shall retain its lien on the Real

Property to the same extent, validity and priority existing as of the Petition Date, and beginning on

the Effective Date shall be paid monthly payments of principal and interest pursuant to a twenty-five

(25) year amortization schedule with interest accruing at a fixed rate of 4.25% per annum, with a

maturity date sixty (60) months after the Petition Date. Class 1 is Impaired.

2.      Class 2 – Allowed Secured Claim of Orange County Code Enforcement.

Class 2 consists of the Allowed Secured Claim of Orange County Code Enforcement. The Class 2 Claim is secured by a statutory lien on the Real Property. In full satisfaction of its Allowed Class 2 Claim, Orange County Code Enforcement shall retain its lien on the Real Property to the same extent, validity and priority existing as of the Petition Date, and beginning on the Effective Date shall be paid monthly payments of principal and interest pursuant to a twenty-five (25) year amortization schedule with interest accruing at a fixed rate of 4.25% per annum, with a 5 year term. Class 2 is Impaired.

3.      Class 3 – Allowed Secured Claim of Sunray Paving & Construction Company.

Class 3 consists of the Allowed Secured Claim of Sunray Paving & Construction Company ("Sunray"). The Class 3 Claim is secured by a statutory construction lien on the Real Property. In full satisfaction of its Allowed Class 3 Claim, Sunray shall retain its lien on the Real Property to the same extent, validity and priority existing as of the Petition Date, and beginning on the Effective Date shall be paid monthly payments of principal and interest pursuant to a twenty-five (25) year amortization schedule with interest accruing at a fixed rate of 4.25% per annum, with a 5 year term. Class 3 is Impaired.

4.      Class 4 – Allowed Secured Claim of Centerstate Bank.

Class 4 consists of the Allowed Secured Claim of Centerstate Bank ("Centerstate"). The Class 4 Claim is secured by a first priority mortgage lien and security interest in the Real Property, and certain personal property of the Debtor. In full satisfaction of its Class 4 Allowed Secured Claim, Centerstate shall retain its lien on the Real Property to the same extent, validity and priority existing as of the Petition Date, and beginning on the Effective Date shall be

paid monthly payments of principal and interest, with interest accruing at a fixed rate of 5.15% per annum, amortized over 20 years, with a maturity date thirty (30) months after the Effective Date. Provided Debtor remains in compliance with the obligations set forth in Class 4, Centerstate will forego enforcement of any personal guarantee associated with its mortgage loan to the Debtor. Class 4 is Impaired.

     5.        Class 5 – Allowed Secured Claim of Centerstate Bank
                (2008 Ford Krystal Bus; VIN: 1FDAF56R68EC79597)

        Class 5 consists of the Allowed Secured Claim of Centerstate Bank ("Centerstate"). The Class 5 Claim is secured by a first priority lien on the Debtor's 2008 Ford Krystal Bus (the "2008 Ford"). In full satisfaction of its Class 5 Allowed Secured Claim, Centerstate shall retain its lien on the 2008 Ford to the same extent, validity and priority existing as of the Petition Date, and beginning on the Effective Date shall be paid monthly payments of principal and interest with interest accruing at a fixed rate of 5.50% per annum, amortized over five (5) years with a five-year term. Provided Debtor remains in compliance with the obligations set forth in Class 5, Centerstate will forego enforcement of any personal guarantee associated with its auto loan to the Debtor. Class 5 is Impaired.

     6.        Class 6 – Allowed Secured Claim of Ford Motor Credit Company, LLC. (2017 Ford T350HD Van; VIN: 1FBVU4XG1HKA29872)

        Class 6 consists of the Allowed Secured Claim of Ford Motor Credit Company ("Ford") in the amount of $31,000.00. The Class 6 Claim is secured by a first priority lien on the Debtor's 2017 Ford T350HD Van (the "2017 Ford"). In full satisfaction of its Class 6 Allowed Secured Claim, Ford shall retain its lien on the 2017 Ford to the same extent, validity and priority existing as of the Petition Date and beginning on the Effective Date shall be paid monthly

payments of principal and interest with interest accruing at a fixed rate of 5.99% per annum, amortized over four (4) years with a four year payoff. Class 6 is Impaired.

       7.        <u>Class 7 – Allowed Secured Claim of PNC Bank</u>.
(2007 Chevy Bus, VIN: 1GBE5V1227F408127; 2005 GMC Van, VIN: 1GDJG31U651195313)

Class 7 consists of the Allowed Secured Claim of PNC Bank ("PNC"). The Class 7 Claim is secured by a first priority lien on the Debtor's 2007 Chevy Bus (the "2007 Chevy") and 2005 GMC Van (the "2005 GMC"). In full satisfaction of its Class 7 Allowed Secured Claim, PNC shall retain its liens on the 2007 Chevy and 2005 GMC to the same extent, validity and priority existing as of the Petition Date and beginning on the Effective Date shall be paid monthly payments of principal and interest with interest accruing at a fixed rate of 4.25% per annum, amortized over five (5) years with a five year payoff. Class 7 is Impaired.

      C.      <u>Unsecured Claims</u>.

       1.        <u>Class 8 – Allowed General Unsecured Claims</u>.

Class 8 consists of all Allowed General Unsecured Claims against the Debtor. In full satisfaction of their Allowed Class 8 Claims, holders of such claims shall receive quarterly payments based on the Debtor's operations. The quarterly payments shall be for five (5) years after the Effective Date equal to twenty-five percent (25%) of the Debtor's actual net profits for each calendar quarter, which payment shall be distributed pro rata to all Class 8 Claim Holders on the month following the conclusion of each calendar quarter (the "Cash Flow Payments"). Each allowed Class 8 Claimholder may request reasonable financial information form the Debtor to verify the calculation of the Class 8 payment(s). The maximum Distribution to Class 8 Claimholders shall be equal to the total amount of the Class 8 Claims, and no Class 8 Claimholder shall receive an amount greater than the amount of its Allowed Unsecured Claim. Class 8 is Impaired.

D.      Equity Interests.

1.      Class 9 – Equity Ownership Interests in the Debtor.

Class 9 consists of all membership interests currently issued or authorized in the Debtor. Allowed Equity Interests shall retain their interests in the Debtor to the same extent and validity as of the Petition Date. Class 9 is Unimpaired.

## ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

A.      Leases and Executory Contracts.

The Plan provides the Debtor shall have through and including the Effective Date within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not rejected or subject to a filed motion to reject by such date, then such unexpired lease or executory contract shall be deemed assumed. The Debtor's position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtor was a party as of the Petition Date.

## ARTICLE VI – MEANS OF IMPLEMENTATION.

A.      Business Operations.

The Plan contemplates that the Debtor will continue to manage and operate its business in the normal course, but with restructured debt obligations. Debtor believes the rental income received from Gold Park Orlando, LLC and the lessees identified on Debtor's Schedule "G", will be sufficient to make all Plan Payments and maintain existing operational expenses as established by the Projections.

B.  <u>Funds Generated During Chapter 11</u>.

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

C.  <u>Preservation, Prosecution and Defense of Causes of Action</u>.

Except as set forth herein, upon Confirmation, the Debtor and the Reorganized Debtor shall have, retain, reserve and be entitled to assert all claims, and Causes of Action, including all pending adversary proceedings whether or not such causes of action have been commenced as of the Effective Date. The Reorganized Debtor shall prosecute or defend, as appropriate, such actions through to final judgment, and any appeals it deems necessary and appropriate; provided, however, that the Reorganized Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as it deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Reorganized Debtor deems such action to be in the best interest of creditors without Bankruptcy Court or other approval. Any recoveries derived from the Causes of Action shall be distributed by the Reorganized Debtor in accordance with the terms of the Plan.

D.  <u>Disbursing Agent</u>.

The Reorganized Debtor will serve as the Disbursing Agent for all distributions to be made under the Plan. The Reorganized Debtor will oversee and direct: (i) all claim objections; (ii) all disbursements to be made under the Plan; and (iii) all other actions required under the Plan, the Bankruptcy Code, or by order of the Bankruptcy Court.

E.    <u>Procedures For Resolving Disputed Claims</u>.

1.    <u>Prosecution of Objections to Claims</u>.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date. In the event that service by publication is necessary, the procedures for publication available under Florida Law may be utilized.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan.  Except as set forth in the Plan, upon Confirmation the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    <u>Estimation of Claims</u>.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.    <u>Cumulative Remedies</u>.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

4.    <u>Payments and Distributions on Disputed Claims</u>.

As and when authorized by a Final Order, Disputed Claims or Interest that become "Allowed" shall be paid by the Reorganized Debtor such that the Holder of such Allowed

Claim or Interest receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such dispute by settlement or Final Order.  Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor or Equity Interest Holder who holds both an Allowed Claim and a Disputed Claim or Interest will not receive a distribution until such dispute is resolved by settlement or Final Order.

     5.     <u>Allowance of Claims</u>.

     (i)     <u>Disallowance of Claims</u>.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under  §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor.  The Debtor reserves and shall have the exclusive right and authority to bring any causes of action under Chapter 5 of the Bankruptcy Code.

     (ii)     <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim, lien or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed

Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

      6.      <u>Controversy Concerning Impairment</u>.

      If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

**<u>ARTICLE VII – MISCELLANEOUS</u>.**

      A.      <u>Authority to Effectuate the Plan</u>.

      Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for herein will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtor's operating agreement, if so required, such that the provisions of this Plan can be effectuated. The Reorganized Debtor shall be authorized, without further applicable to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

      B.      <u>Post-Confirmation Status Report</u>.

      Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Reorganized Debtor shall file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

C.      Conditions to Effectiveness.

The Effective Date shall not occur until: (i) the entry of the Confirmation Order by the Bankruptcy Court and (ii) the expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such order. The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

D.      Exculpation from Liability.

The Debtor, the Reorganized Debtor, and its Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.  With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case.  The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and its respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.  Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise

preserved by the Plan.  The terms of this exculpation shall only apply to liability arising from actions

taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION.  MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to

make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtor's

members or managers shall not be relieved or released from any personal contractual liability except

as otherwise provided in the Plan.

E.   Police Power.

Nothing in this Article VII shall be deemed to effect, impair, or restrict any federal or

state governmental unit from pursuing its police or regulatory enforcement action against any

person or entity, other than to recover monetary claims against the Debtor for any act, omission, or

event occurring prior to Confirmation Date to the extent such monetary claims are discharged

pursuant to § 1141 of the Code.

F.   Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any

time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws this Plan, (ii)

the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not

substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

      G.     <u>Modification of Plan</u>.

      The Debtor may seek to amend or modify this Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

      H.     <u>Retention of Jurisdiction</u>.

      After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

      1.     All objections to the allowance of Claims and Interests and the compromise of Claims;

      2.     All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the

Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtor or the Reorganized Debtor, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 5 Claims;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Reorganized

Debtor.

I.     Headings.

Article, Section, and Paragraph headings used herein are for convenience only and

shall not affect the interpretation or construction of any provision of this Plan.

J.     Cramdown.

The Debtor reserves the right to seek confirmation of this Plan under § 1129(b) of

the Code.

K.     Notices.

All notices required or permitted to be made in accordance with the Plan shall be

in writing and shall be delivered personally or by facsimile transmission or mailed by United

States Mail to the following:

> Counsel for the Debtor:
>
> Justin M. Luna, Esquire
> Latham, Shuker, Eden & Beaudine, LLP
> 111 N. Magnolia Ave., Suite 1400
> Orlando, Florida 32801
>
> Debtor:
> Golden Touch Transportation, LLC
> c/o Mr. Saad Ahmed
> 7330 Narcoossee Road
> Orlando, Florida 32822
>
> United States Trustee:
> George C. Young Federal Building
> 400 West Washington Street, Suite 1100
> Orlando, Florida 32801

L.      Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

M.      Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making Distributions shall comply with all tax withholding and reporting requirements imposed on him by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below.   The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

N.      Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise

agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

O.    Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 8 Claims in accordance with the provisions of this Plan.  However, checks issued by the Reorganized Debtor with respect to Allowed Class 8 Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Reorganized Debtor. Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor by the Holder of the Class 8 Claim with respect to the check originally issued.

P.    Transfer Taxes.

Under § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

## ARTICLE IX – CONCLUSION

Debtor recommends that holders of Claims and Interests vote to accept the Plan.

**RESPECTFULLY SUBMITTED** this 7th day of August 2018, in Orlando, Florida.

/s/ Justin M. Luna
**Justin M. Luna, Esq.**
Florida Bar No. 0037131
jluna@lseblaw.com
**Daniel A. Velasquez, Esq.**
Florida Bar No. 0098158
dvelasquez@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile:  407-481-5801
*Attorneys for Debtor*